**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **Brougher, Inc.,** | ) | |
| | ) | **Case No. 16-35575** |
| **Debtor.** | ) | |
| | ) | |

**OBJECTION OF TBK BANK, SSB TO DEBTOR'S**
**EMERGENCY MOTION FOR USE OF CASH COLLATERAL**
**[Relates to Docket No. 4]**

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

TBK Bank, SSB ("**TBK**"), by and through its undersigned attorneys, hereby files its objection to Debtor's *Emergency Motion for Use of Cash Collateral* (the "**Motion**") [Dkt. No. 4], and in support of its objection, TBK respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1. On November 2, 2016 ("**Petition Date**"), Brougher, Inc. ("**Debtor**") filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Since that date, the Debtor has remained in possession and control of its assets and business as a debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2. As this objection establishes, following an analysis of the available financial information regarding the Debtor's financial performance, TBK has determined and will demonstrate that the Debtor: (1) has no equity in its assets because it has attempted to sell its business as a "going concern" for months pre-petition and was unable to attract an offer for the

[1] The Debtor and TBK are in discussions regarding potential resolution of this Objection as well as an agreed proposed final cash collateral order. However, as of the time of this Objection, no agreement has been reached; thus, TBK files this objection to preserve all of its rights at the upcoming final cash collateral hearing in the event an agreement is not ultimately reached.

business or assets of the Debtor in an amount sufficient to satisfy TBK's fully perfected liens;[2] and (2) has demonstrated no capacity to generate virtually any post-petition replacement receivables, invoices, or documentation of any billable work-in-progress sufficient to replace cash collateral used to fund operations post-petition and to adequately protect TBK for the Debtor's use of its cash collateral.

3. The Debtor is rapidly eroding TBK's cash collateral, and has demonstrated absolutely no ability or prospect of generating replacement cash collateral, or providing any other source of adequate protection of its interests. The Debtor's own Motion indicates that the Debtor operates at a loss, showing expenses of $241,673 versus income of $233,138.[3] And this projection does not even include any projected costs for the Debtor's general bankruptcy counsel or US Trustee fees, which if included, would demonstrate administrative insolvency.

4. Moreover, the Debtor has bankrolled its chapter 11 filing by diverting the proceeds of TBK's collateral, and now it proposes only a replacement lien for collateral that should have already been paid to TBK. Given these circumstances, even if the Bankruptcy Code permitted it, which it does not, it would be difficult to conceive of a more inequitable result to TBK than if the Debtor is permitted to use TBK's cash collateral.

## PRE-PETITION LOAN DOCUMENTS AND INDEBTEDNESS

5. On or about March 4, 2016, TBK and the Debtor entered into a certain $13,050,000 million senior secured facility ("**Credit Facility**") comprised of a $10.4 million revolving credit facility ("**Revolver Loan**") and a $2.65 million term loan facility ("**Term**

[2] The Debtor has admitted that TBK's liens are properly perfected in the cash collateral. *See* Debtor's *Emergency Motion for Use of Cash Collateral* at Dkt. No. 4, ¶ 2 ("TBK Bank, SSB ("TBK") is the Debtor's only perfected secured creditor with an interest in cash collateral.").

[3] Upon information and belief, the Debtor has only collected approximately $26,963 in receivables since the Petition Date. In addition, as of the time of this Objection, TBK has not been provided with an proposed final cash collateral budget going forward.

**Loan**").

6. The Credit Facility is memorialized by, among other related agreements, the following loan documents (collectively, the "**Loan Documents**"): (a) Loan Agreement, by and between the Debtor, as borrower, and TBK, as lender, dated March 4, 2016, as amended by that certain First Amendment to Loan Agreement, by and between the Debtor and TBK, dated July 7, 2016; (b) Deposit Account Control Agreement, by and between the Debtor and TBK, dated March 4, 2016, regarding Restricted Account No. 4498069 at TBK (the "**Blocked Account**"); (c) Deposit Control Agreement, by and between the Debtor and TBK, dated March 4, 2016, regarding Account No. 4498028 at TBK; (d) Deed of Trust, Assignment of Rents and Security Agreement, dated March 4, 2016, executed by the Debtor in favor of TBK and recorded in the real property records of Waller County, Texas as Instrument Number 1601508; (e) UCC-1 Financing Statement, filed on March 7, 2016, with the Texas Secretary of State as Instrument Number 16-0007411808, perfecting TBK's lien against "All assets of the Debtor, whether now owned or hereafter acquired, including all products and proceeds thereof"; (f) Environmental Indemnity Agreement, dated March 4, 2016; (g) Guaranty Agreement by Wade Brougher (as guarantor) in favor TBK, dated March 4, 2016; (h) Landlord Subordination Agreements by Blake Partners L.P., Lykes Building Holdings Associates and Smetana Texas Realty Associates, each dated March 4, 2016; (i) Subordination Agreement by Blake Partners L.P., dated March 4, 2016; and (j) other related documents and agreements.

7. As of the Petition Date the indebtedness owed by the Debtor to TBK (the "**Indebtedness**") under the Loan Documents was no less than $7,817,580.54, consisting of (i) Revolving Loans (including over advances made pre-petition) of $5,183,753.70 in principal amount, plus $58,488.75 in accrued interest; plus (ii) Term Loan of $2,546,944.46 principal

amount, plus $26,221.91 in accrued interest; plus (iii) bank fees and expenses of no less than $2,171.72; plus (iv) professional fees and expenses and disbursements of TBK's attorneys and financial advisors. Interest, costs and other charges continue to accrue after the Petition Date.

8. As of the Petition Date, the Debtor owes TBK not less than the Indebtedness, secured by a first priority, and perfected security interest in all assets and property of the Debtor, including without limitation the Debtor's equipment, inventory, accounts receivable, cash and real property, and all proceeds and product thereof.

10. Pre-petition, the Debtor defaulted under the Loan Documents, and accordingly, on October 18, 2016, TBK issued the Debtor a notice of default in accordance with the Loan Documents and applicable law. Thereafter, on October 19, 2016, TBK issued the Debtor a notice of acceleration (the "**Notice of Acceleration**"), and demanded payment in full of the Debtor's debt to TBK, in accordance with the Loan Documents and applicable law.

11. On October 20, 2016, the day after TBK sent the Notice of Acceleration, the Debtor, in breach of the Loan Documents, opened up Account No. 6741534906 at BBVA Compass and, upon information and belief, instructed customers to begin remitting payment to the account at BBVA Compass — instead of to the Blocked Account, as required in the Loan Documents. Since the improper opening of the account at BBVA Compass, approximately $696,343.85 of TBK's collateral (in the form of accounts receivable) has been deposited in the BBVA Compass account in violation of the Loan Documents.

12. As of the filing of this Objection, based on available information, the Debtor is holding $203,363.07 of TBK's cash collateral, comprised of the following funds: (a) $15,283.00 held in the Blocked Account at TBK; and (b) $188,080.07 held in Account No. 6741534906 at BBVA Compass.

## OBJECTIONS

13. By filing the Motion, the Debtor seeks authority to use TBK's cash collateral, over TBK's objection. The Debtor, however, has failed to sustain its burden under § 363(p)(1) of the Bankruptcy Code of demonstrating that TBK's interest in the Debtor's assets and in its cash collateral is adequately protected. *In re Energy Partners, Ltd.*, 409 B.R. 211, 235-36 (Bankr. S.D. Tex. 2009) ("The parties requesting court approval to use cash collateral have the burden to prove there is adequate protection for the entities that have an interest in the cash collateral.") As such, TBK respectfully requests that the Court deny the relief sought by the Motion.

### I. TBK Has a Perfected Lien in Cash Collateral

14. In the Loan Agreement, the Debtor granted TBK a continuing lien upon, and security interest in, the Collateral, including "all Collateral which is presently in existence or hereafter acquired and which is owned by [the Debtor] or in which [the Debtor] has any interest, whether held by [the Debtor] or by others for the [Debtor's] account, and wherever located." Loan Agreement, §3.01. Collateral is defined as "all assets of Borrower, including without limitation, all present and future <u>Accounts</u>,[[4]] Chattel Paper, <u>Deposit Accounts</u>, Instruments, Documents, Letter of Credit Rights, Commercial Tort Claims, Equipment, <u>Inventory</u> and other <u>Goods</u>,[[5]] General Intangibles, Investment Property, Real Estate, and any life insurance policies, <u>cash and cash equivalents</u>, books and records and all substitutions, replacements, products and proceeds of any of the foregoing…." Loan Agreement, §1.02 (emphasis added). Accordingly,

[4] The Loan Agreement defines Accounts as "any and all of [the Debtor's] present and future … accounts (as defined in the UCC)" and "all Proceeds" thereof. Loan Agreement, §1.02. The Texas UCC defines Account as "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of…." TX Bus. & Com. Code §9.102(2).

[5] The Loan Agreement defines Goods as "all present and hereafter acquired goods (as defined in the UCC) and all Proceeds thereof." Loan Agreement, §1.02. The Texas UCC defines Goods as "all things that are movable when a security interest attaches." TX Bus. & Com. Code §9.102(44).

the Debtor has granted TBK a lien on, among other things, its inventory, any accounts receivable generated by the sale of its property (including goods and inventory) and any cash and cash equivalents.

15. On March 7, 2016, TBK filed that certain UCC-1 Financing Statement with the Texas Secretary of State, filed as Instrument Number 16-0007411808. The UCC-1 perfected TBK's lien against "[a]ll assets of the Debtor, whether now owned or hereafter acquired, including all products and proceeds thereof." As provided for under Texas law, the UCC-1 reference to "[a]ll assets of the Debtor" is sufficient to perfect TBK's security interest in the Collateral. *See* TX Bus. & Com. Code §9.102(2) ("A financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to Section 9.108; or (2) an indication that the financing statement covers all assets or all personal property." (emphasis added)).

## II. The Debtor Has Failed to Sustain its Burden of Proof

16. Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" (emphasis added). To satisfy this standard in the context of the grant of adequate protection, (1) there must be a sufficient business justification to warrant the use of estate property and (2) the transaction must not otherwise violate or be incompatible with the provisions of chapter 11. *See In re Continental Air Lines, Inc*. 780 F. 2d. 1223, 1227 (5th Cir. 1986).

17. Pursuant to § 363(c)(2) of the Bankruptcy Code, a secured party's "cash collateral" may not be used by a debtor unless all parties with an interest in such cash collateral

consent or the court, after notice and a hearing, authorizes its use.[6] *See* 11 U.S.C. §363(c)(2); *In re MRI Beltline Indus., L.P.*, 476 B.R. 917, 925 (Bankr. N.D. Tex. 2012). Further, the Bankruptcy Code expressly provides that the debtor bears the burden of proof in establishing that its secured creditors' interests will be adequately protected upon the debtor's use of the cash collateral. *See* 11 U.S.C. § 363(p); *Energy Partners*, 409 B.R. at 235-36; *In re Am. Sweeteners, Inc.*, 2000 WL 1010582, at *4 (Bankr. E.D. Pa. July 14, 2000); *In re O.P. Held, Inc.*, 74 B.R. 777, 784 (Bankr. N.D.N.Y 1987). "Such protection must not be illusory and, particularly in the context of the use of cash collateral, must be 'of the most indubitable equivalence.'" *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999) (quoting *In re Waste Conversion Techs., Inc.*, 205 B.R. 1004, 1007 (D. Conn. 1997)).

18. Adequate protection is not defined in the Bankruptcy Code, but section 361 enumerates three non-exclusive forms of it: (i) "cash payment or periodic cash payments" to the extent that the stay, use, sale or lease or grant of a lien results in a decrease in the value of such entity's interest in such property, (ii) "additional or replacement liens" to the extent that the stay, use, sale or lease or grant of a lien results in a decrease in the value of such entity's interest in such property, or (iii) such other relief that is the "indubitable equivalent" of the secured party's interest in such property. *See* 11 U.S.C. §361.

19. The essential purpose of adequate protection is to protect against any diminution in value of a secured creditor's collateral during the chapter 11 cases. *See In re Geijsel*, 480 B.R. 238, 265 n.19 (Bankr. N.D. Tex. 2010); *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex.

---

[6] "Cash collateral" is defined in section 363(a) of the Bankruptcy Code as:

> . . . [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of the case under this title.

2006) ("The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case."); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization."); *In re Monroe Park*, 17 B.R. 934, 937 (D. Del. 1982) (adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in collateral during the case).

20. Here, the Debtor has failed to establish that TBK's security interest in its cash collateral (which interest has not been disputed) will be adequately protected. In the Motion, rather, the Debtor merely concludes that it should be authorized to use cash collateral because TBK will be adequately protected through the use of replacement liens. However, a replacement lien on a secured creditor's existing prepetition collateral does not provide adequate protection. *Kimbrough Inv. Co. v. Royal d'Iberville Corp. (In re Royal d'Iberville Corp.)*, 10 B.R. 37, 39 (Bankr. S.D. Miss. 1981) (debtor could not satisfy its adequate protection burden with property already subject to creditor's security interest); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 565-67 (3d Cir. 1994) (rejecting as adequate protection continued personal guarantees and liens on sales proceeds to which a creditor was already entitled); *In re Pacific Lifestyle Homes, Inc.*, No. 08-45328, 2009 WL 688908 at *10 (Bankr. W.D. Wash. March 16, 2009) (replacement liens found inadequate where lenders' deeds of trust already extended to those proceeds). As the Debtor's prepetition inventory is sold and receivables are generated, no additional value is generated as the sales liquidate finite, consumable collateral on which TBK already holds valid and perfected liens. The Debtor has therefore failed to allege, or include, any factual record that could support a finding of adequate protection. On this ground alone, the Motion should be denied.

## III. TBK is Not Adequately Protected

21. TBK further objects to the Debtor's continued use of its cash collateral because the claimed adequate protection is, in fact, wholly absent (or in a light most favorable to the Debtor, *inadequate*).

### A. The Debtor is Operating at a Loss and has No Capacity to Generate Sufficient Replacement Collateral to Adequately Protect TBK's Interest in its Cash Collateral

22. As the Fifth Circuit has made clear, "the language of the adequate protection provisions suggests that they were intended to protect a secured creditor against a decrease in the value of its collateral due to the debtor's use, sale or lease of that collateral during the stay." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1389 (5th Cir. 1986), *on reh'g*, 808 F2d 363 (5th Cir. 1987), *aff'd, sub nom., United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (emphasis added).

23. As set forth in the Motion, the Debtor is (a) not proposing to make *any* adequate protection, interest, principal or other payments to TBK on account of or in consideration of its use of TBK's cash collateral, and in any event such payments would be from TBK's cash, which it already has a lien, making such payments inadequate to protect TBK; (b) generating, according to the Motion, *no replacement collateral* (accounts receivable) as the budget itself reflects negative cash flow from operations (income of $233,138 versus $241,673 in expenses), and in any event such accounts receivable would be from TBK's prepetition inventory, which it already has a lien, making such payments inadequate to protect TBK; and (c) offering no other form of adequate protection for the Debtor's apparent irreversible erosion of TBK's cash collateral. Moreover, the Motion and budget do not even account for the growing costs of administration, such as U.S. Trustee fees and the fees of the Debtor's general bankruptcy counsel, which if

included would make the Debtor administratively insolvent. *See In re TMT Procurement Corp.*, 534 B.R. 912, 918 (Bankr. S.D. Tex. 2015) ("Negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b)."). Not only can the Debtor *not* meet post-petition operating expenses (without irreversibly depleting TBK's collateral), it clearly cannot provide adequate protection to TBK.

**B. There is No Equity Cushion in the Debtor's Assets**

24. TBK alone, excluding any other secured creditors, is owed no less than $7,817,580.54 as of the Petition Date. Based on the pre-petition offers to acquire the company as a going concern that the Debtor was able to obtain pre-petition, the Debtor's assets are worth *less* than TBK's claim alone. Simply stated, there appears to be *no* equity in the Debtor's assets to protect TBK's interests.

25. In addition, the Debtor's principals have repeatedly declined to provide financial support or capital in the Debtor prior to the Petition Date. The Debtor's only remaining assets as of the Petition Date, which appear to have a value less than the amount of TBK's debt, are essentially comprised of machinery and equipment, land, pre-petition accounts receivable (the collectability of which is uncertain given the disparity in receivables collected ($26,963) versus the receivables expected to be collected ($233,138)) and cash collateral on hand, which is being rapidly depleted through ongoing operations.

**IV. <u>The Debtor May Not Use TBK's Cash Collateral to Fund Claims Against TBK</u>**

26. The Debtor may not force a secured creditor like TBK to abdicate its collateral to be used to fund the costs of the Debtor prosecuting claims against TBK. Indeed, it is hard to fathom a more inequitable result than a secured creditor's effectively bankrolling the prosecution of litigation against it by a debtor. This Court should deny any attempt by the Debtor to force

TBK to fund litigation against itself. The Debtor has no assets other than those in which it granted liens to TBK, so the source of any compensation paid to counsel for the Debtor for prosecuting litigation against TBK is TBK's collateral.

27. Fifth Circuit law dispels any notion that the costs of bringing a claim against TBK may be surcharged against TBK's cash collateral. A collateral surcharge requires the claimant to demonstrate that the expenses incurred and sought to be recovered were reasonable, necessary, and for the benefit of the secured creditor. 11 U.S.C. § 506(c). The Fifth Circuit has interpreted the last prong requiring a benefit to mean "*primarily* for the benefit of the secured creditor," which in turn means that the expenses result in a "quantifiable direct benefit to the secured creditor." *New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers, Ltd.)*, 924 F.2d 74, 76–77 (5th Cir. 1991) (emphasis added). The primary benefit must inure to the *secured creditor*—not to the debtor or other creditors. *TND Fin., Inc. v. James F. Parker Interests (In re Grimland, Inc.)*, 243 F.3d 228, 233 (5th Cir. 2001) ("The default rule in bankruptcy is, accordingly, that administrative expenses are paid out of the estate and not by the secured creditor of the debtor."); *In re Cal Data Sys., Inc.*, No. 07–33222–H3–7, 2007 WL 2669364, at *2 (Bankr. S.D. Tex. Sept. 7, 2007).

28. The nature of a lawsuit against a secured creditor renders axiomatic that no direct benefit can possibly run to a secured creditor where a claimant employs cash collateral to file claims against the secured creditor. Such an action is detrimental to a secured creditor. The bankruptcy court in *Cal Data Systems* applied such reasoning in a factually similar situation. There, the debtor's principal asset was a claim against its secured lender, who had a perfected security interest in all of the debtor's cash. *In re Cal Data Sys.*, 2007 WL 2669364, at *1. The trustee could not obtain counsel on a contingency fee and instead sought to use the lender's cash

collateral to fund the lawsuit. *Id.* The court rejected the trustee's argument on no-benefit grounds, holding that the trustee could not investigate and prosecute litigation against the secured lender using cash collateral. *Id.* at *2. Here, the Debtor has offered no reason why the result should not be the same. TBK therefore objects to any request by the Debtor to use <u>any</u> of TBK's cash collateral to prosecute claims against TBK.

29. Furthermore, this analysis applies equally whether the payments were made before or after the Petition Date. The Bankruptcy Court has jurisdiction under 11 U.S.C. § 329 over any payment within a year before the petition date "for services rendered or to be rendered in contemplation of or in connection with the [bankruptcy] case." 11 U.S.C. § 329. The Debtor therefore retained an interest in any retainer funds paid to counsel until services were actually rendered, and, consequentially, the retainer funds became property of the estate on the Petition Date. *See Barron v. Countryman*, 432 F.3d 590, 1000–01 (5th Cir. 2005); 11 U.S.C. § 541(a)(1). Accordingly, TBK reserves all its rights pursuant to 11 U.S.C. §§ 329 and 330 concerning any funds paid to counsel prepetition that might be used to fund litigation against TBK.

## V. <u>Demand for Segregation and Accounting</u>

30. Where there is no consent or adequate protection, a debtor in possession must "segregate and account for any cash collateral in the [debtor in possession]'s possession, custody, or control." 11 U.S.C. § 363(c)(4) (segregation and accounting required "[e]xcept as provided in paragraph (2) of this subsection"); *In re White Plains Dev. Corp.*, 137 B.R. 139, 142 (Bankr. S.D.N.Y. 1992) ("Under the Bankruptcy Code, as applied after the Butner case, a debtor must segregate and account for any cash collateral that it does not have the consent of the creditor or authority from the court to use, sell or lease.") (quotation omitted).

31. TBK has not consented to the Debtor's use of its cash collateral and pending order of this Court authorizing its use, the Debtor is statutorily compelled to "segregate and account" for TBK's cash collateral. TBK hereby demands that the Debtor provide evidence of compliance with § 363(c)(4), and account for all proceeds of TBK's collateral.

**RESERVATION OF RIGHTS**

32. This objection is without prejudice to, and TBK hereby fully reserves, the right to raise additional arguments at oral argument or at a later date, in respect of the Motion, including with respect to any to-be-filed budget. Additionally, TBK reserves all rights regarding the Debtor's apparent conversion of its collateral to make prepetition payments to various parties.

**CONCLUSION**

For all of the foregoing reasons, TBK respectfully requests that this Court sustain its objections, deny the Motion and grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2016

NORTON ROSE FULBRIGHT US LLP

By: */s/ Kristian W. Gluck*

Kristian W. Gluck
TX Bar No. 24038921
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

and

Jason L. Boland
TX Bar No. 24040542
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Attorneys for TBK Bank, SSB

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection has been served via the Court's CM/ECF system to all parties registered to receive such service on November 16, 2016.

*/s/ Kristian W. Gluck*
Kristian W. Gluck

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **Brougher, Inc.,** | ) | |
| | ) | **Case No. 16-35575** |
| **Debtor.** | ) | |
| | ) | |

**ORDER DENYING DEBTOR'S EMERGENCY MOTION**
**FOR USE OF CASH COLLATERAL**
**[Relates to Docket No. 4]**

CAME ON THIS DAY for consideration the *Emergency Motion for Use of Cash Collateral* (the "Motion") [Docket No. 10] filed by Brougher, Inc. (the "Debtor"). After reviewing the Motion and the objection filed by TBK Bank, SSB, and after considering the evidence and arguments made at the hearing on the Motion, the Court finds that the Motion should be denied. Therefore, it is

ORDERED that the Motion is denied.

Signed: November ____, 2016

___________________________________
JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE