## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.  16-35575-H4-11 |
| | § | |
| | § | |
| BROUGHER, INC. | § | |
| DBA FORGE USA | § | (CHAPTER 11) |
| | § | |
| Debtor. | § | |

### DEBTOR'S THIRD AMENDED
### COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

**DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION HAS BEEN SET FOR A FINAL HEARING ON APPROVAL OF THE DISCLOSURE STATEMENT AND A HEARING ON CONFIRMATION OF THE PLAN OF LIQUIDATION ON JULY 28, 2017 AT 10:30 A.M., IN COURTROOM 600, UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS, 77002.**

**July 12, 2017.**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1
II.   THE SOLICITATION ........................................................................................2
III.  DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF
      TIME...................................................................................................................3
      A.   DEFINITIONS.........................................................................................3
      B.   RULES OF INTERPRETATION.............................................................8
      C.   COMPUTATION OF TIME....................................................................8
      D.   INCORPORATION OF DOCUMENTS BY REFERENCE ...................8
IV.   DEBTOR'S HISTORY, ASSETS, LIABILITIES,  LITIGATION AND MAJOR
      EVENTS. .............................................................................................................9
           1.   Incorporation and Ownership ..........................................................9
           2.   Management.......................................................................................9
           3.   Products and Services .....................................................................10
           4.   Assets of Brougher as of the Filing Date .......................................11
           5.   Summary of Creditors and Debt as of Filing Date .........................11
           6.   Prepetition Litigation .....................................................................13
           7.   Events Leading to Brougher's Bankruptcy Filing. .........................13
V.    MAIN EVENTS IN THE BANKRUPTCY CASE ...........................................14
      A.   BAR DATE ............................................................................................14
      B.   MEETING OF CREDITORS ................................................................14
      C.   RETENTION OF PROFESSIONALS ...................................................14
      D.   CERTAIN ORDERS AND EVENTS IN THE BANKRUPTCY CASE ...15
      E.   SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS...............16
VI.   UNCLASSIFIED CLAIMS ...............................................................................16
      A.   ADMINISTRATIVE CLAIMS ..............................................................16
           1.   Professional Fee Claims..................................................................16
           2.   U.S. Trustee Quarterly Fees............................................................17
           3.   All Other Administrative Claims .....................................................18
           4.   Allowed Priority Tax Claims ...........................................................18
VII.  CLASSIFICATION AND TREATMENT   OF CLAIMS AND EQUITY
      INTERESTS ......................................................................................................19
      A.   CLASS 1 - ALLOWED PRIORITY NON-TAX CLAIMS ....................19
      B.   CLASS 2 – ALLOWED SECURED CLAIMS........................................20
      C.   CLASS 3 -  ALLOWED UNSECURED CLAIMS OF NON-INSIDER
           UNSECURED CREDITORS...................................................................21
      D.   CLASS 4 – ALLOWED UNSECURED CLAIMS OF INSIDER
           UNSECURED CREDITORS...................................................................22
      E.   CLASS 5 – ALLOWED INTERESTS OF MEMBERS OF DEBTOR. .............22
VIII. MEANS FOR EXECUTION OF THE PLAN.....................................................23
      A.   FUNDING THE PLAN ..........................................................................23
      B.   RESERVES.............................................................................................23
      C.   APPOINTMENT OF THE LITIGATION TRUSTEE ...........................24
           1.   Appointment Of The Litigation Trustee ...........................................24

|  | 2. | Powers And Duties Of The Litigation Trustee. | 24 |
|  | 3. | Release. | 25 |
|  | 4. | Monitoring, Auditing And Bonding. | 25 |
|  | 5. | Available Cash. | 25 |
|  | 6. | Compensation Of Litigation Trustee And Compensation And Retention Of Professionals. | 25 |
|  | 7. | Resignation. | 26 |
|  | 8. | Reporting Duties. | 26 |
|  | 9. | Termination. | 27 |
| D. | THE LITIGATION TRUST | | 27 |
|  | 1. | The Brougher Litigation Trust Transfer Date. | 27 |
|  | 2. | Establishment of the Brougher Litigation Trust. | 27 |
|  | 3. | Transfer of Estate Property to the Brougher Litigation Trust. | 27 |
|  | 4. | Transfer Free and Clear of Claims. | 28 |
|  | 5. | Beneficiaries of the Brougher Litigation Trust. | 28 |
|  | 6. | Distributions from the Brougher Litigation Trust. | 28 |
|  | 7. | Dissolution of the Litigation Trust. | 28 |
| E. | DISSOLUTION OF THE DEBTOR. | | 29 |
| F. | RESIGNATION OF OFFICERS AND DIRECTORS. | | 29 |
| IX. | QUARTERLY FEES, RESERVES AND DISTRIBUTIONS | | 29 |
| A. | PAYMENT OF POST-CONFIRMATION QUARTERLY FEES. | | 29 |
| B. | PROVISIONS GOVERNING DISTRIBUTION | | 29 |
| C. | PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS | | 30 |
| X. | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | | 31 |
| A. | ENTRY OF CONFIRMATION ORDER. | | 31 |
| B. | FINALITY OF CONFIRMATION ORDER; WAIVER | | 31 |
| C. | THE RESERVES | | 32 |
| XI. | PRESERVATION OF RETAINED CLAIMS AND VESTING. | | 32 |
| XII. | TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES | | 34 |
| XIII. | MODIFICATIONS AND AMENDMENTS | | 35 |
| XIV. | RETENTION OF JURISDICTION | | 35 |
| XV. | EFFECTS OF CONFIRMATION | | 36 |
| A. | BINDING EFFECT | | 36 |
| B. | EXCULPATION AND LIMITATION OF LIABILITY | | 36 |
| C. | DISCHARGE. | | 37 |
| XVI. | MISCELLANEOUS PROVISIONS | | 37 |
| XVII. | CONFIRMATION OF THE PLAN. | | 38 |
| A. | VOTING PROCEDURES AND REQUIREMENTS. | | 38 |
| B. | ACCEPTANCE | | 39 |
| C. | ACCEPTANCE OR REJECTION OF THE PLAN | | 40 |
| D. | CONFIRMATION OF THE PLAN. | | 40 |
| E. | THE BEST INTERESTS TEST | | 41 |
| F. | FEASIBILITY | | 42 |
| XVIII. | DISCLAIMERS | | 42 |
| XIX. | CONCLUSION AND RECOMMENDATION | | 43 |

**EXHIBITS TO DEBTOR'S THIRD AMENDED COMBINED**

**DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION**

| EXHIBITS | DESCRIPTION |
|---|---|
| Exhibit "1". | Litigation Trust Agreement |
| Exhibit "2" | Liquidation Analysis |
| Exhibit "3" | Ballot |
| Exhibit "4" | List of 90 Day Payments or Transfers |

# I.    INTRODUCTION

On or about November 2, 2016 (the "***Filing Date***"), Brougher, Inc. *dba* Forge USA ("***Debtor***" or "***Brougher***") filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("***Bankruptcy Court***" or "***Court***").

This Third Amended Combined Disclosure Statement and Plan of Liquidation (the "***Plan***" or "***DS/Plan***" or "***Combined DS/Plan***"), any amendments, supplements, and exhibits thereto, the accompanying Ballot form, if any, and the related materials delivered together herewith are being furnished by the Debtor to holders of Impaired Claims and Impaired Interests pursuant to § 1125,[1] in connection with the solicitation by the Debtor of votes to accept or reject the Plan and the transactions as described herein.  The Plan is proposed by the Debtor (the "***Proponent***") for the liquidation of the Debtor pursuant to the Bankruptcy Code.

The Plan constitutes a liquidating chapter 11 plan for the Debtor.  All of the Debtor's tangible assets have been liquidated pursuant to the Sale.  The Sale generated approximately $650,000.00 in cash proceeds plus the assumption of certain liabilities, and a credit bid of approximately $4,808,500.00. The Plan provides for the appointment of a Litigation Trustee to litigate any remaining claims of the Estate retained under the Plan.

The Debtor will be dissolved as soon as practicable following the establishment of the Litigation Trust pursuant to the Plan.  The Litigation Trust will be dissolved as soon as practicable after the retained claims have been litigated or otherwise resolved pursuant to the Plan.

This DS/Plan is designed to provide adequate information to enable holders of Claims against and Interests in the Debtor to make an informed decision whether to vote in favor of or against the Plan.  All Creditors and Interest holders are encouraged to read this DS/Plan in its entirety before voting to accept or reject the Plan.  The projected financial information contained herein has not been the subject of an audit, unless otherwise stated.

All holders of Impaired Claims should read and consider carefully the matters described in the DS/Plan prior to voting on the Plan.  In making a decision to accept or reject the Plan, each Creditor must rely on its own examination of the Debtor as described in this DS/Plan, including the merits and risks involved.  You are encouraged to seek the advice of qualified legal counsel with respect to the legal effect of any aspect of the DS/Plan.  In addition, Confirmation and Consummation of the Plan are subject to conditions precedent that could lead to delays in Consummation of the Plan.  There can be no assurance that each of these conditions precedent will be satisfied or waived or that the Plan will be consummated.  Even after the Effective Date, distributions under the Plan may be subject to delay so that disputed claims can be resolved.

With the exception of historical information, future events and matters discussed herein are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act

---

[1]    All references to "§" reference the applicable section of the Bankruptcy Code.

of 1995. Such forward looking statements are subject to risks, uncertainties and other factors which could cause actual results to differ materially.

No party is authorized by the Proponent to give any information or make any representations with respect to the DS/Plan other than that which is contained herein. No representation or information concerning the Debtor, its business or the value of its properties has been authorized by the Proponent, other than as set forth herein. Any information or representation given to obtain your acceptance or rejection of the Plan that is different from or inconsistent with the information or representations contained herein should not be relied upon by any holders of Claims or Interests in voting on the Plan.

This DS/Plan has been prepared in accordance with § 1125 and not in accordance with federal or state securities laws or other applicable non-bankruptcy law. Entities holding or trading in or otherwise purchasing, selling or transferring Claims against, Interests in or securities of, the Debtor should evaluate this DS/Plan only in light of the purpose for which it was prepared.

This DS/Plan has not been approved or disapproved by the Securities and Exchange Commission (the "*Commission*") or by any state securities commission or similar public, governmental or regulatory authority, and neither such Commission nor any such authority has passed upon the accuracy or adequacy of the statements contained herein.

With respect to contested matters, adversary proceedings and other pending or threatened actions (whether or not pending), this DS/Plan and the information contained herein shall not be construed as an admission or stipulation by any Entity, but rather as statements made in settlement negotiations governed by Rule 408 of the Federal Rules of Evidence and any other rule or statute of similar import.

This DS/Plan shall not be construed to be providing any legal, business, financial or tax advice. Each holder of a Claim or Interest should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

If you are a Creditor or Interest holder, you should read this Combined Disclosure Statement and Plan carefully. The Proponent urges all holders of Claims in Impaired Classes receiving Ballots to accept the Plan as contained herein.

## II.    THE SOLICITATION

This DS/Plan is submitted by the Debtor to be used in connection with the solicitation of votes on the Plan describing the terms of the liquidation of the Debtor.

The Debtor has requested that the Bankruptcy Court hold a hearing on approval of this DS/Plan to determine whether this DS/Plan contains "adequate information" in accordance with § 1125. Pursuant to § 1125(a)(1), "adequate information" is defined as "information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, … that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant Class to make an informed judgment about the plan …."

A hearing to consider the final approval of the Disclosure Statement and confirmation of the Plan has been set for the 28th day of July 2017, at 10:30 a.m., in Courtroom 600, United States Courthouse, 515 Rusk Street, Houston, Texas (the "***Confirmation Hearing***").

Objections to the final approval of the Disclosure Statement or objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on the counsel for the Proponent listed below to ensure receipt by them on or before 5:00 p.m., on July 26, 2017.  Bankruptcy Rule 3007 governs the form of any such objection.

### III.   DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A.   DEFINITIONS

For purposes of this Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article.  Any term used in this Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

"***Administrative Claim***" or "***Administrative Priority Claim***" means a Claim that is entitled to priority under §§ 326, 327, 330, 503(b)(1) - (9), 506(c) or 1103 asserted in this case, which Claims are described and treated in Article VI.  A of this DS/Plan.

"***Administrative Claim Bar Date***" means the date by which Administrative Claims entitled to priority under §§ 326, 327, 330, 503(b), 506(c) or 1103 asserted in this case, including substantial contribution Claims, must be filed or be forever barred from asserting Administrative Claims against the Debtor and/or sharing in any distribution under the DS/Plan.  The Administrative Claim Bar Date, including with respect to Professionals Fee Claims for the period through the Effective Date, is the thirtieth (30th) day after the Effective Date.

"***Admin Claim Reserve***" means the reserve established under the Plan from the proceeds of the sale of the Forge to Hilco, and any other cash and non-cash assets subject to TBK's liens (including any proceeds thereof), for the payment of Allowed Professional Fee Claims, U.S. Trustee Quarterly Fees and those Priority Tax Claims and other Administrative Claims that TBK has consented, in writing, to being paid.

"***Allowed Claim***" means a Claim or any portion thereof (i) that has been allowed by a Final Order, (ii) that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a

Final Order, or (iii) that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (i) a timely objection has not been filed, or (ii) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"*Avoidance Actions*" means any actions commenced or that may be commenced before or after the Effective Date arising under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state, federal, or foreign statutes and common law, including, without limitation fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions.

"*Bankruptcy Case*" means the Chapter 11 bankruptcy case commenced by the Debtor upon the filing of a voluntary petition on the Petition Date, styled *In re Brougher, Inc. dba Forge USA*, Case No. 16-35575.

"*Bankruptcy Estate*" or "*Estate*" shall mean the estate of the Debtor created under § 541 upon the filing of the Bankruptcy Case.

"*Bankruptcy Rules*" mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"*Claim*" means a claim against any portion of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in § 101(5).

"*Class*" means a category of holders of Claims or Interests, as described below in Article VII.

"*Brougher Litigation Trust*" or "*Litigation Trust*" means the Litigation Trust established under the Plan pursuant to the Litigation Trust Agreement.

"*Confirmation*" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"*Confirmation Date*" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"*Confirmation Hearing*" means the date set by the Court for a hearing to confirm Debtor's Plan, which has been set for the 28th day of July 2017, at 10:30 a.m. in Courtroom 600, United States Courthouse, 515 Rusk Street, Houston, Texas.

"*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan.

"*Disputed Claims Reserve*" means the reserve established under the Plan from any unencumbered cash on hand and/or Other Distributable Proceeds as set forth in Article VIII.  B of the Plan.

"***Distribution Order***" means the Order Authorizing Distribution of Funds to TBK Bank SSB [ECF Doc. 129].

"***DS/Plan***", "***Disclosure Statement and Plan***" or "***Combined DS/Plan***" shall mean this Third Amended Combined Disclosure Statement and Plan of Liquidation dated as of July 12th, 2017.

"***Effective Date***" means the date when all the conditions to the occurrence of the Effective Date set forth in Article X.  of this DS/Plan have been satisfied or waived in accordance with this DS/Plan.

"***Filing Date***" means November 2, 2016, the date when the Debtor filed this Chapter 11 proceeding.

"***Final Order***" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"***Forge***" means the forge shop assets previously owned by the Debtor in Houston, Texas.

"***Hilco***" means Hilco Industrial, LLC

"***Hilco APA***" has the meaning assigned in Article V. E.

"***Hilco Sale Order***" means the Order (A) Authorizing and Approving the Sale of Assets to Hilco Industrial, LLC Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Asset Purchase Agreement, and (C) Granting Related Relief [ECF Doc. 101] which resulted in the sale of the Forge to Hilco.

"***Impaired***" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124.

"***Insider***" has the meaning set forth in 11 U.S.C. § 101(31).

"***Interest***," "***Equity Interest***" or "***Membership Interest***" means any ownership interest in the Debtor, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock and other equity security of the Debtor together with any warrants, options or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

"***IRS***" means the Internal Revenue Service.

"***Lender Liability Cause of Action***" means the potential action which Brougher, Inc. or Blake Partners, LLC, or Wade Brougher may allege against TBK Bank, SSB and/or its principals, officers or directors for damages allegedly caused by TBK's exercise of control over Brougher, Inc.'s day-to-day operations.

"*Litigation Trust Agreement*" means the agreement creating the trust to be implemented pursuant to Article VIII. D of the Plan, which terms are consistent with the terms of the Plan. To the extent the Litigation Trust Agreement is not filed with the Plan, it will be filed in the Bankruptcy Case prior to the Confirmation Hearing.

"*Litigation Trust Assets*" means the assets transferred to the Brougher Litigation Trust pursuant to the terms of this Plan.

"*Litigation Trustee*" means the trustee of the Brougher Litigation Trust after his or her appointment pursuant to the Plan and the Brougher Litigation Trust Agreement.

"*Machine Shop*" means the machine shop assets previously owned by the Debtor in Brookshire, Texas.

"*Other Distributable Proceeds*" shall mean the proceeds of the liquidation of unencumbered assets of the Estate, including, but not limited to, proceeds derived from the prosecution of Retained Claims.

"*Okin Adams Plan Expenses*" means the out-of-pocket expenses incurred by Okin Adams LLP in the prosecution, solicitation, and distribution of the Combined DS/Plan (not including Professional Fees).

"*Person*" means an individual, corporation, partnership, governmental unit, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

"*Plan*" means Articles III. through XIX. of this First Amended Combined DS/Plan.

"*Plan Documents*" means any documents referenced in the Plan that are intended to be executed pursuant to the Plan.

"*Plan Reserve*" means the reserve established under the Plan from any unencumbered cash on hand and/or any Other Distributable Proceeds for the payment of certain Allowed Claims as set forth in Article VIII. B of the Plan.

"*Priority Non-Tax Claim*" means a Claim asserted under §§ 507(a)(3-7 and 9-10) against the Debtor's Bankruptcy Estate.

"*Priority Tax Claim*" means a Claim entitled to priority under Bankruptcy Code section 507(a)(8).

"*Professional Fee Claims*" means a Claim by any professional retained, employed or to be compensated in the Bankruptcy Case pursuant to Bankruptcy Code sections 327, 328, 330, 331 and/or 1103 for compensation for services rendered and reimbursement for expenses submitted in accordance with sections 330, 331, or 503(b) of the Bankruptcy Code for fees and expenses incurred after the Filing Date and prior to and including the Effective Date.

"*Proponent*" means the Debtor.

"**Reserves**" means the reserves established under the Plan, consisting of the Admin Claim Reserve, the Plan Reserve and the Disputed Claims Reserve.

"**Retained Claims**" shall mean all causes of action, rights, claims, and demands against any creditors, third parties, investors, individuals, or insiders that have not been released in accordance with the terms and provisions of this Plan that the Debtor or the Bankruptcy Estate owns or has an interest in or can assert in any fashion, whether pre-petition or post-petition, including, without limitation, all litigation claims, whether such causes of action arise from contract, tort theories of liability, breach of fiduciary duty, member, manager or officer liability claims, insurance claims, statutory claims or other claims, all objections to Claims, and all adversary proceedings, all Avoidance Actions against any Person for any obligation incurred, or payment made or property transferred by or on behalf of the Debtor prior to the Effective Date (including payments made or property transferred that was identified in the Debtor's SOFA; see attached Exhibit "A"), including those claims, counterclaims, defenses and causes of action listed in Article XI of this Plan, and all claims against Blake Partners, Wade Brougher, Jack Miller, Global Practice Solutions and TBK Bank, including a claim for lender liability and related acts, and Claims against the Debtor's current and former directors, officers, employees, and management except as otherwise set forth herein.

"**Sale**" means the sale of substantially all of the Debtor's assets to TBK and Hilco approved by the Court's Sale Orders.

"**Sale Orders**" has the meaning assigned in Article V. D.

"**Schedules**" has the meaning ascribed to such term in Article III. D.

"**Secured Claim**" means a Claim that is secured by a valid, perfected and enforceable lien that is not subject to avoidance under bankruptcy or non-bankruptcy, but only to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of claimant's interest in the Debtor's property securing the Claim as determined by a Final Order of the Bankruptcy Court pursuant to § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"**SOFA**" has the meaning ascribed to such term in Article III. D.

"**Substantial Consummation**" shall have the meaning given to that term in § 1101(2). Substantial Consummation shall occur on the Effective Date.

"**TBK**" means TBK Bank, SSB.

"**TBK APA**" has the meaning assigned in Article V. E.

"**TBK Sale Order**" means the Order (A) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Asset Purchase Agreement, and (C) Granting Related Relief [ECF Doc. 103] which resulted in the sale of the Machine Shop and the Debtor's accounts receivable to TBK.

"*Trust Expenses*" means all expenses of the Brougher Litigation Trust, including the Okin Adams Plan Expenses.

"*Unimpaired Claim*" means a Claim that is not an Impaired Claim.

"*Unsecured Claim*" shall mean a Claim that is not a Secured Claim and that is not entitled to priority under § 507(a)(1-9), and includes the deficiency portions of a Secured Claim.

"*Voting Deadline*" means July 26, 2017, at 5:00 p.m., the deadline by which Ballots to accept or reject the Plan must be received by Debtor's counsel in order to be counted.

## B.       RULES OF INTERPRETATION

For purposes of this Combined Disclosure Statement and Plan, (a) any reference in this Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in this Combined Disclosure Statement and Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in this Combined Disclosure Statement and Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Combined Disclosure Statement and Plan; (d) the words "herein" and "hereto" refer to this Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of this Combined Disclosure Statement and Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Combined Disclosure Statement and Plan; and (f) the rules of construction set forth in § 102 and in the Bankruptcy Rules shall apply.

## C.       COMPUTATION OF TIME

All times referenced in this Disclosure Statement and Plan are prevailing Central Time. In computing any period of time prescribed or allowed by this Combined Disclosure Statement and Plan, the provisions of FED. R. BANKR. P. 9006(a) shall apply.

## D.       INCORPORATION OF DOCUMENTS BY REFERENCE

This DS/Plan incorporates by reference certain documents relating to the Debtor that are not presented herein or delivered herewith. The documents that have been filed in the Debtor's Bankruptcy Case are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for confirmation, including the following documents: (a) the Debtor's Schedules of Assets and Liabilities ("*Schedules*") and (b) the Statement of Financial Affairs ("*SOFA*"), including exhibits to the SOFA, filed on November 23, 2016 [ECF Doc. 39]. Documents and pleadings filed in this case are available at the following website: http://www.txsb.uscourts.gov/.

## IV.    DEBTOR'S HISTORY, ASSETS, LIABILITIES, LITIGATION AND MAJOR EVENTS

The information in this Article IV. is from documents filed by the Debtor in the Bankruptcy Case.

**1.    Incorporation and Ownership**

Brougher was formed on July 9, 1999 as a corporation organized under the laws of the State of Texas. On December 27, 2012, it merged with a subsidiary, Machine USA, LLC, with Brougher being the surviving corporation after the merger. Brougher was in the business of forging parts and equipment for the oil and gas industry.

As of the Filing Date, the Debtor was owned 100% by Brougher Holdings, LLC. The following chart lists the shareholders of Brougher Holdings, LLC.:

| TABLE 1 | | |
|---|---|---|
| **NAME OF SHAREHOLDER** | **CLASS/NUMBER** | **100%** |
| Wade Brougher<br>4747 W. Alabama<br>Houston, TX 77027 | Membership Interest | 51% |
| Jerry Brougher<br>43 River Hollow Lane<br>Houston, TX 77027 | Membership Interest | 49% |

**2.    Management**

As of the Filing Date, Debtor's management consisted of the following individuals:

| | |
|---|---|
| Wade Brougher, President | Mr. Brougher is the President and controlling shareholder of the Debtor. |
| Ann Pitman, Secretary | Ms. Pitman is the Secretary of the Debtor. She does not own an interest in the Debtor. |
| Jack Miller, Executive Director | Mr. Miller is the Executive Director of the Debtor. He does not own an interest in the Debtor. |

Following the Filing Date, the Debtor retained John Baumgartner of Stout Risius Ross, Inc. ("Stout Advisory") as a Financial Advisor.

3.      **Products and Services**

The following is a brief description of the products and services that the Debtor offered prior to the Sale:

a.      **Open Die Forging**.  Open die forging is a method of shaping steel that allows the material to flow without being confined in the dies, providing complete control and customization of the forging. Considered a premier option for truly custom components of all shapes and sizes, open die forging delivers critical strength and flexibility for projects that require made-to-order pieces.

The Debtor's 260,000 sq. ft. forging facility included a variety of unique machines, including a 20 metric ton, rail bound forging manipulator, a 14,000 pound open frame pneumatic hammer, and a 2,000 ton hydraulic press, allowing the Debtor to produce finished forged materials up to 24 feet long with diameters reaching 90 inches.

b.      **Heat Treating**.  Heat treating is an established technique for preventing fracture that employs carefully controlled heating and cooling to alter the physical and chemical properties of metals without fully changing their shapes.

To provide optimal enhancement of the selected alloy material, the Debtor used advanced technology, including sophisticated controllers that monitor and augment the furnace burner operations to maintain a constant temperature throughout the heat treat process. The Debtor's proven system included a combination of tilt face, car bottom, and box furnaces, as well as tanks that used both water and polymer quenching for increased flexibility and maximum hardening of many different alloys.

The Debtor had two fully equipped facilities dedicated to providing heat treating services. Each facility was equipped with 12 box furnaces and 2 car bottom furnaces that had load zones ranging in size from 60" x 60" x 58" to 100" x 140" x 50".

c.      **Rough Machining**.  Rough machining is the shaping of forged materials to meet the precise requirements of a given project. By using forged stock rather than raw metal, the Debtor's machining resulted in a higher quality, refined product with greater density, hardness, strength, and mechanical properties. The Debtor was able to offer these expert machining capabilities with rapid delivery times due to its proven processes, advanced machining equipment, and professional staff.

To ensure delivery of large and complex orders on time and to specifications, the Debtor's rough machining facility included four high-volume cranes: two with 10-ton capacities and two with 30-ton capacities. The facility also included various tools for fast, accurate, and precise processing.

d.      **Metallurgical Testing**.   The Debtor performed all metallurgical testing in accordance  with  client  specifications  and  industry  code.  This  includes

-10-

metallographic analysis and mechanical testing. The Debtor employed various nondestructive testing procedures, including ultrasonic, magnetic particle, and liquid penetration, to identify any discontinuities.

The Debtor's advanced testing facility stringently upheld industry standards regarding research, production and quality assurance. As one of the country's premier forging facilities, the Debtor employed fully qualified and certified personnel with extensive experience in metallurgical testing and analysis. The Debtor also worked closely with a number of reputable laboratories in the Houston region.

Adhering to SNT-TC-1A standards established by the American Society for Nondestructive Testing, the Debtor's facility operated on the basis that quality can only be definitively determined via a comprehensive system of evaluation, verification, careful documentation, and retesting when a particular sample required closer scrutiny.

**4.     Assets of Brougher as of the Filing Date**

| ASSETS | VALUE[2] |
|---|---|
| Cash | $188,231.63 |
| Deposits and Prepayments | $0.00 |
| Accounts Receivable (Net) | $993,593.00 |
| Investments | $0.00 |
| Inventory | $1,173,211.32 |
| Office Furniture | $12,800.00 |
| Office Equipment | $53,315.00 |
| Machinery | $5,315,550.00 |
| Real Property | $0.00 |
| Intangibles and Intellectual Property | $0.00 |
| TOTAL: | $7,736,700.95 |
| Claim against TBK Bank SSB | Unknown |
| Claim against D&Os, management, and other Insiders | Unknown |
| Chapter 5 Claims | Unknown |

**5.     Summary of Creditors and Debt as of Filing Date**

The description of Claims in the Plan does not necessarily imply that the Claim is an Allowed Claim.  All Claims and the validity and/or extent of any Liens securing any Claims are subject to further investigation and analysis and, depending on the conclusion of such analysis, may be subject to an objection.

---

[2]Value is as asserted by the Debtor as of the Filing Date.

**Secured Debt:**

The following is a graphic presentation of the total prepetition secured creditors of the Debtor (the "***Prepetition Secured Creditors***"), not including capital lease obligations:

| TABLE 2 | | |
|---|---|---|
| **SECURED CREDITOR** | **CURRENT BALANCE[3]** | **COLLATERAL** |
| Triumph – TBK Bank, SSB | $8,000,000.00 | All Assets |
| Third Coast Bank SSB | $260,114.87 | Hone Machine |
| Dell Financial Services | $5,498.09 | Computer Equipment |
| Ricoh USA, Inc. | $12,041.31 | Ricoh equipment, copiers and printers |
| **TOTAL** | **$8,277,654.27** | |

**Capital Lease Secured Obligations**

| CAPITAL LEASES | COLLATERAL | AMOUNT OWED | VALUE OF COLLATERAL |
|---|---|---|---|
| Blake Partners | Land, Buildings and Manufacturing Facility | $30,000.00 | $0.00 |
| DE LAGE LANDEN Financial Services, Inc. | Two (2) Caterpillar Forklifts | $5,037.11 | $60,000.00 |
| U.S. Bank Equipment Finance | Xerox Imaging Equipment, Copiers and Printers | $4,169.50 | $4,000.00 |
| TOTAL: | | $39,206.61 | $64,000.00 |

**Priority Unsecured Debt.**

As set forth in the Debtor's Schedule E, there are no creditors holding priority unsecured claims.

**Unsecured Debt.**

As set forth the Debtor's Schedule F, the total Unsecured Debt is $4,134,788.40, and there are 120 creditors.

---

[3] Estimated balance as of the Filing Date.

6.    **Prepetition Litigation**

On or about September 5, 2013, the Debtor entered into an Employment Agreement (the "Agreement") with Mark Miller ("Miller").  Pursuant to the Agreement, Miller was to serve as Vice President/COO for the Debtor commencing on or about September 15, 2013. On or about December 3, 2015 Miller filed suit against the Debtor seeking $150,000.00 severance pay and $75,000.00 of an earned bonus in connection with the Agreement. The case is Cause No. 2015-72804; *Miller v. Brougher, Inc. dba Forge USA*, in the 80th District Court of Harris County, Texas.

Information about the litigation is provided in Paragraph 7 of Part 3 of the SOFA, which is incorporated herein by reference.

7.    **Events Leading to Brougher's Bankruptcy Filing.**

Commencing in the spring of 2016, the Debtor began to explore certain strategic alternatives in light of the Debtor's continued need for capital to meet its liquidity needs. During this time, the Debtor held discussions with parties that expressed an interest in a transaction involving the Debtor's business.

On or about March 4, 2016, the Debtor and TBK entered into a certain $13.05 million senior secured facility comprised of a $10.4 million revolving credit facility and a $2.65 million term loan facility (the "Loan Agreement"). On July 7, 2016 the Loan Agreement was amended by the parties (the "First Amended Loan Agreement" and together with the Loan Agreement, the "Loan Agreements"). Pursuant to the Loan Agreements, TBK held a lien against all of the Debtor's assets.

The Debtor's position is that TBK created a special relationship with Brougher, Inc. by virtue of the March 4, 2016 Loan Agreement and the July 7, 2016 First Amendment to Loan Agreement, and established complete lender control by the Bank over the Company by including provisions for a bank lock box, Availability Block, a Restructuring Consultant, the reserve clause and the depreciation clause, all of which hampered the Company's ability to do business. Commencing after July 7, 2016, the Debtor asserts that the Bank wrongfully exercised its control over the Company's day-to-day operations by controlling its accounts receivables and limiting release of funds for payment of operating expenses, including payroll and purchase of product for work in progress, and inventory necessary to competitively bid on new jobs and to comply with contractual requirements on existing jobs.  The Debtor asserts that the Bank's pattern of refusing to fund inventory, and piecemeal approval for existing expenses caused the Company to lose contracts, lose customers and fail as a going concern.  TBK disputes each of the Debtor's allegations and intends to vigorously defend any claims brought by the Debtor, Wade Brougher and/or Blake Partners.

On or about October 18, 2016, TBK issued the Debtor a notice of default in accordance with the Loan Agreements and applicable law. Thereafter, on October 19, 2016, TBK issued the Debtor a notice of acceleration, and demanded payment in full of the Debtor's debt to TBK.

Ultimately, the Debtor's financial difficulties proved unmanageable and the Debtor determined to seek bankruptcy relief.

## V.    MAIN EVENTS IN THE BANKRUPTCY CASE

### A.    BAR DATE

**NOTICE IS HEREBY GIVEN THAT THE COURT HAS SET AS THE BAR DATES IN THIS CASE <u>MARCH 13, 2017</u>, THE DEADLINE WITHIN WHICH NON-GOVERNMENTAL PROOFS OF CLAIM OR INTERESTS MUST BE FILED, AND <u>MAY 9, 2017</u>, THE DEADLINE WITHIN WHICH GOVERNMENTAL PROOFS OF CLAIM MUST BE FILED.    FAILURE TO FILE A PROOF OF CLAIM OR INTEREST REQUIRED BY THE BANKRUPTCY CODE OR BANKRUPTCY RULES BY THE BAR DATE MAY RESULT IN YOUR CLAIM OR INTEREST IN THIS CHAPTER 11 PROCEEDING BEING <u>DISALLOWED</u>.    PLEASE FILE YOUR PROOFS OF CLAIM OR INTEREST THROUGH AN ATTORNEY ELECTRONICALLY, OR BY MAIL ADDRESSED TO: DAVID J. BRADLEY, CLERK OF COURT, P. O.   BOX 61010, HOUSTON, TEXAS 77208.**

### B.    MEETING OF CREDITORS

The Court set the 341 meeting of creditors for December 12, 2016, at 3:30 p.m.

### C.    RETENTION OF PROFESSIONALS

On November 3, 2016, the Debtor filed its Application to Employ Cooper & Scully, PC as General Counsel. [ECF Doc. 2].  On November 21, 2016, the Debtor filed its Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code authorizing the Employment and Retention of Okin & Adams LLP and Substitution as Lead Counsel for the Debtor. [ECF Doc. 33]. On December 2, 2016, the Court entered an Order Authorizing Employment of Cooper & Scully, PC as General Counsel to the Estate for the Period November 2, 2016 through November 28, 2016 and Order Authorizing the Employment of Okin & Adams, LLP from November 15, 2016 and Substitution as Lead Counsel for the Debtor. [ECF Doc. 55]. At that time, Cooper & Scully, PC was withdrawn as counsel of record for the Debtor.

On November 14, 2016, the Debtor filed its application to Employ H. Gray Burks, IV with ShapiroSchwartz, LLP as Special Litigation Counsel. [ECF Doc. 26]. On November 21, 2016, TBK Bank, SSB filed its Objection to the Application for Authority to Employ H. Gray Burks, IV as Special Litigation Counsel for Brougher, Inc. *Nunc Pro Tunc* to August 23,2016. [ECF Doc. 36]. On December 6, 2016, the Court entered an Order Authorizing the Employment of H. Gray Burks, IV as Special Litigation Counsel. [ECF Doc. 57].

On November 21, 2016, the Debtor filed its Application to Employ Patrick Magill and Magill PC as Chief Restructuring Officer. [ECF Doc. 34]. On December 5, 2016, TBK Bank, SSB filed its Objection to the Application to Employ Patrick Magill and Magill PC as Chief Restructuring Officer. [ECF Doc. 54]. On December 6, 2016, the Debtor filed its Amended Application to Employ Patrick Magill as Financial Advisor. [ECF Doc. 56]. Also on December 6, 2016, the Court entered an Order Denying Debtor's Amended Application to Employ Patrick Magill and Magill PC as Financial Advisor to the Debtor. [ECF Doc. 58].

On January 9, 2017, the Debtor filed its Application to Employ Stout Risius Ross, Inc. as Financial Advisor. [ECF Doc. 70]. On January 13, 2017, the Court entered an Order Approving Application to Employ Financial Advisor to the Debtor. [ECF Doc. 77].

## D.    CERTAIN ORDERS AND EVENTS IN THE BANKRUPTCY CASE

On November 3, 2016, the Debtor filed its Emergency Motion for Use of Cash Collateral. [ECF Doc. 4].

On November 3, 2016, the Court entered an Order Granting Emergency Use of Cash Collateral. [ECF Doc. 10].

On November 16, 2016, TBK filed its Objection of TBK Bank, SSB to Debtor's Emergency Motion for Use of Cash Collateral. [ECF Doc. 30].

On November 21, 2016, the Court entered an Order Granting Motion to Extend Deadline to File Schedules or Provide Required Information. [ECF Doc. 35].

On December 14, 2016, the Court entered an Order Denying Debtor's Emergency Motion for Use of Cash Collateral. [ECF Doc. 63].

On January 13, 2017, the Court entered an Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection to TBK Bank, SSB. [ECF Doc. 75].

On January 13, 2017, the Court also entered an Order Approving Sale and Bidding Procedures in Connection With the Sale of Substantially All of the Debtor's Assets and Granting Related Relief (the "***Bid Procedures Order***"). [ECF Doc. 76].

On February 22, 2017, the Court entered an Order Regarding Auction Held on February 15, 2017. [ECF Doc. 90].

On March 3, 2017, the Court entered an Order (A) Authorizing and Approving the sale of Assets to Hilco Industrial, LLC Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Asset Purchase Agreement, and (C) Granting Related Relief (the "***Hilco Sale Order***"). [ECF Doc. 99].

On March 3, 2017, the Court also entered an Order (A) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Asset Purchase Agreement, and (C) Granting Related Relief (the "***TBK Sale Order***"). [ECF Doc. 100].

**THESE PLEADINGS CAN BE ACCESSED THROUGH THE PACER ELECTRONIC CASE FILING SYSTEM FOR THE SOUTHERN DISTRICT OF TEXAS, WITH A PACER ACCOUNT WHICH CAN BE PURCHASED AT HTTP://PACER.PSC.USCOURTS.GOV. THE WEBSITE ADDRESS FOR THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS IS: HTTP://WWW.TXSB.USCOURTS.GOV**

## E.    SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

On January 13, 2017, this Court entered the Bid Procedures Order. Pursuant to the Bid Procedures approved in the order, potential bidders were given an opportunity to participate in the sale process and submit a bid in accordance with the Bid Procedures (such bid is referred to as a "Qualified Bid"). Pursuant to the Bid Procedures, an auction was conducted at 1:30 p.m. on February 15, 2017 in the Courtroom 600 on the 6th Floor of the Federal Court Building, 515 Rusk, Houston, Texas 77002. The qualified bid for the Machine Shop and the Debtor's accounts receivables provided by TBK was the highest bid made at the auction (the "***TBK APA***"). The qualified bid for the Forge provided by Hilco was the highest bid made at the auction (the "***Hilco APA***").

Following the auction, the Court conducted a hearing, finding that that the "Successful Bidder" for the Machine Shop and the Debtor's accounts receivable was TBK. Likewise, the Court found that the "Successful Bidder" for the Forge was Hilco. Together the TBK APA and Hilco APA resulted in the sale of substantially all of the Debtor's assets (the "***Sale***"). The TBK APA was approved by the Court pursuant to the TBK Sale Order, and the Hilco APA was approved by the Court pursuant to the Hilco Sale Order (collectively, the "***Sale Orders***").

As shown in the Sale Orders, the "Purchase Price" under the TBK APA was $4,808,500.00, paid by credit bid pursuant to section 363(k) of the Bankruptcy Code. The "Purchase Price" under the Hilco APA was $650,000.00, paid in cash, plus a lease of the premises owned by Blake Partners for not less than 120 days in the amount of $25,000.00 per month.

Reference to the TBK APA and Hilco APA should be made for the full terms of the Sale, which terms are incorporated here as if fully set forth herein.

## VI.    UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified under the Plan, and the treatment of those Claims is set forth herein.

## A.    ADMINISTRATIVE CLAIMS

As provided under Bankruptcy Code section 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Accordingly, holders of Administrative Claims are not entitled to vote on this Plan.

### 1 – PROFESSIONAL FEE CLAIMS

**Description**. All Professional Fee Claims. A summary of these claims are as follows:

| Claimant | Estimated Unpaid Fees and Expenses Through May 24, 2017 |
|---|---|
| Okin & Adams, LLP, Counsel for the Debtor | $25,000.00 |
| Cooper & Scully, PC – Former Counsel for the Debtor | $8,446.35 [4] |
| Stout Risius Ross, Inc. – Financial Advisor to the Debtor | $40,000.00 |
| ShapiroSchwartz, LLP – Special Litigation Counsel for Debtor | Not yet invoiced[5] |

**Treatment**.  Subject to the terms of the paragraph immediately below this paragraph, the Professional Fee Claims[6] shall be paid in full out of the Admin Claim Reserve on the later of the Effective Date or the date such Professional Fee Claim becomes an Allowed Claim, except, however, the Professional Fee Claim of Cooper & Scully, PC shall be a deferred Administrative Claim paid from the first proceeds of the Litigation Trust (after the Trust Expenses but prior to the Class 3 claims).  The holders of the Professional Fee Claims shall file and serve an application for final allowance of compensation and reimbursement of expenses no later than the thirtieth (30th) day after the Effective Date.

Notwithstanding the foregoing, to the extent the Admin Claim Reserve contains insufficient funds on the Effective Date to pay all Allowed Professional Fee Claims in full, each professional shall receive the following on account of its Allowed Professional Fee Claim: (a)  an initial payment to each such professional, made as soon as practicable following entry of the Final Order approving such professional's fee award, to the extent not previously paid by the Debtor (inclusive of any retainers), consisting of a pro rata share of the aggregate amount allocated in the Admin Claim Reserve on the Effective Date for the payment of Allowed Professional Fee Claims (based on good faith determination of the Debtor); and (b) thereafter, when additional funds are first available, including from Other

---

[4] Cooper & Scully, PC received a retainer in the amount of $18,588.50. [ECF Doc. 41]. Pursuant to the Court's Order on the Final Fee Application Cooper & Scully, PC [ECF Doc. 78], Cooper & Scully, PC was permitted to draw down the retainer and was granted an administrative claim for the remaining $8,446.35 pursuant to 11 U.S.C. § 503(b)(2).

[5] Pursuant to the *Order Authorizing Employment of H. Gray Burks, IV As Special Litigation Counsel*, no payments to Mr. Burks may be "made from TBK Bank's collateral, including cash collateral. ECF Doc. 57.

[6] Okin Adams and Stout Advisory are not charging Professional Fees for the prosecution of the Combined DS/Plan. However, Trust Expenses will be charged.

Distributable Proceeds, a pro rata share of such additional funds until all Allowed Professional Fee Claims are paid in full, and until such Allowed Professional Fee Claims are paid in full, they shall rank in right of payment *pari passu* with the fees and expenses over the Litigation Trust and Litigation Trustee.  The Debtor is informed and believes that all the professionals have agreed to the foregoing treatment and will be bound by such agreement under the Plan.

Additionally, ShapiroSchwartz, LLP shall be paid the balance of any fees due only to the extent there is a recovery for the Litigation Trust.

## 2 – U.S. TRUSTEE QUARTERLY FEES

**Description.**  The U.S. Trustee Quarterly Fees assessed pursuant to 28 U.S.C. § 1930(a)(6). The following is the estimate of such fees:

| United States Trustee – 4th Quarter Estimate | Less than $10,000.00 |
| --- | --- |

The Debtor's Bankruptcy Estate shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to § 1930(a)(6) without the need for the Office of the United States Trustee to file any request for payment.  Any such fees due as of the Confirmation Date will be paid in full on the Effective Date of the Plan out of the Admin Claim Reserve.  The Litigation Trustee shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) out of available funds until such time as the Bankruptcy Court enters a final decree closing this chapter 11 case, or enters an order either converting this case to a case under chapter 7 or dismissing this case.  After confirmation, the Litigation Trustee shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Litigation Trustee for each quarter, or portion thereof that this chapter 11 case remains open in a format prescribed by the United States Trustee.

## 3 – ALL OTHER ADMINISTRATIVE CLAIMS

**Description**.  All Administrative Claims other than Professional Fee Claims and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930.  All holders of such Claims must timely file such Claims by the Administrative Claim Bar Date or be forever barred from asserting Administrative Claims against the Debtor and/or sharing in any distribution under the DS/Plan.

**Treatment**.  To the extent such Allowed Administrative Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive cash in an amount equal to such Allowed Claim, in full and final satisfaction, settlement and release and in exchange for such Claim, on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim pursuant to a Final Order of the Bankruptcy Court, or as soon thereafter as reasonably practicable.  For the avoidance of doubt, only

those Allowed Administrative Claims that TBK has consented, in writing, to be paid may be paid from TBK's cash collateral.

**4 – ALLOWED PRIORITY TAX CLAIMS**

**Description**.  The Priority Tax Claims listed on Schedule E of the Debtor's Schedules and/or filed in the Bankruptcy Case.

**Treatment**.  To the extent that the holders of Allowed Priority Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, the holder of such Allowed Priority Tax Claim shall receive on the later of the Effective Date or the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, in full and final satisfaction, settlement and release and in exchange for such claim, an amount in cash equal to the unpaid amount of such Allowed Priority Tax Claim, which may be paid through deferred cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored general unsecured claim provided for by the Plan.  For the avoidance of doubt, only those Allowed Priority Tax Claims that TBK has consented, in writing, to be paid may be paid from TBK's cash collateral.

## VII.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

All Claims and Interests are placed in the Classes set forth below.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled.

**A.    CLASS 1 - ALLOWED PRIORITY NON-TAX CLAIMS**

**Description**.  Class 1 consists of the Allowed Priority Non-Tax Claims.

**Treatment**.  Each Allowed Priority Non-Tax Claim in this Class shall be paid in full from the Plan Reserve, the Disputed Claims Reserve and/or Other Distributable Proceeds on the later of the Effective Date or the date such Priority Non-Tax Claim becomes an Allowed Claim.

**Voting**.  Class 1 is not Impaired.  Holders of Class 1 Priority Non-Tax Claims are deemed to have accepted this Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**B.**     **CLASS 2 – ALLOWED SECURED CLAIMS**

1.     Subclass 2A:

**Description**.  Subclass 2A consists of the Secured Claim of TBK described in Table 2 of Article IV, which was asserted in a first lien position on collateral pledged by the Debtor.

**Treatment**.  The Secured Claim of TBK shall be satisfied in full from (i) the credit bid provided for in the TBK Sale Order in the amount of $4,808,500, (ii) the funds, in the amount of $902,641,21, applied to the Secured Claim authorized by the Distribution Order, (iii) any assets remaining in the Admin Claim Reserve after payment of any claims authorized to be paid from the Admin Claim Reserve, and (iv) the retention of the liens securing the Secured Claim of TBK, whether the property subject to such liens is retained by Brougher, Inc. or transferred to the Litigation Trust, to the extent of the allowed amount of the Secured Claim of TBK..  The deficiency amount on account of the Subclass 2A Claim shall be treated as a Class 3 Claim (unless a court of competent jurisdiction awards a final judgment to the Debtor under a theory of lender liability, fraud, or any related claim that voids TBK's claim against the Debtor).

The Debtor and TBK reserve any and all rights, including any claims and defenses, with respect to the distribution of funds to TBK authorized under this Plan.

**Voting**.  Subclass 2A is not Impaired.  Holder of Subclass 2A Secured Claim is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f) and is not entitled to vote on the Plan.

2.     Subclass 2B:

**Description**.  Subclass 2B consists of the Secured Claim of Third Coast Bank SSB described in Table 2 of Article IV, asserted in the amount of $260,114.87 in second lien position on collateral pledged by the Debtor.

**Treatment**.  Pursuant to the Sale, the Subclass 2B Claim was assumed by TBK.

**Voting**.  Subclass 2B no longer holds a claim against the Debtor and, therefore, is not entitled to vote.

3.     Subclass 2C:

**Description**.  Subclass 2C consists of the Secured Claim of Dell Financial Services in Table 2 of Article IV, asserted in the amount of $5,498.09 on the computer equipment collateral pledged by the Debtor.

**Treatment**.  Except to the extent that the holder of an Allowed Subclass 2C Claim agrees to a different treatment, such holder shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Subclass 2C Claim, the following treatment as soon as reasonably practical on or after the Effective Date: Holder of Subclass 2C Claim's legal, equitable, and contractual rights remain unchanged with

respect to its collateral, if any.  The confirmation order will constitute an order for relief from stay.  The creditor in Subclass 2C shall retain its interest in the collateral until paid in full.  Any deficiency amount on account of the Subclass 2C Claim shall be treated as a Class 4 Claim.

The treatment of the Subclass 2C Allowed Claims described herein shall be in full settlement and satisfaction of the Subclass 2C Allowed Claim.

**Voting**.  Subclass 2C is not Impaired.  Holder of Subclass 2C Secured Claim is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f) and is not entitled to vote on the Plan.

4.      Subclass 2D:

**Description**.  Subclass 2D consists of the Secured Claim of Ricoh USA, Inc in Table 2 of Article IV, asserted in the amount of $12,041.31 on imaging equipment, copiers and printers pledged as collateral by the Debtor.

**Treatment**.  Except to the extent that the holder of an Allowed Subclass 2D Claim agrees to a different treatment, such holder shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Subclass 2D Claim, the following treatment as soon as reasonably practical on or after the Effective Date: Holder of Subclass 2D Claim's legal, equitable, and contractual rights remain unchanged with respect to its collateral, if any.  The confirmation order will constitute an order for relief from stay.  The creditor in Subclass 2D shall retain its interest in the collateral until paid in full.  Any deficiency amount on account of the Subclass 2D Claim shall be treated as a Class 3 Claim.

**Voting**.  Subclass 2D is not Impaired.  Holder of Subclass 2D Secured Claim is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f) and is not entitled to vote on the Plan.

**C.    CLASS 3 - ALLOWED UNSECURED CLAIMS OF NON-INSIDER UNSECURED CREDITORS**

**Description**.  Class 3 consists of the Allowed Claims of Unsecured Creditors who are not Insiders of the Debtor, and includes the Claims of the creditors who are not Insiders of the Debtor for (i) any deficiency portions of any of Secured Claims and (ii) any Claim arising out of the rejection of executory contracts and unexpired leases under, if any.

**Treatment**.  Except to the extent that the holder of an Allowed Class 3 Claim agrees to a different treatment, such holder shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Class 3 Claim, the following treatment as soon as reasonably practical on or after the Effective Date:  The Allowed Claims of Non-Insider Unsecured Creditors in this Class 3 shall be satisfied, on a pro rata basis, from distribution of the Plan Reserve, the Disputed Claims Reserve and/or Other Distributable Proceeds available after the satisfaction in full of the accrued fees and expenses of the Litigation Trust, Administrative Claims, accrued amounts due to holders

of Priority Tax Claims, and Priority Non-Tax Claims.  Class 3 claimants will be entitled to interest as allowed by law and determined by the Court prior to any distribution to creditors in Class 4 or Interest Holders in Class 5.

**Voting**.  Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote on the Plan.

D.     **CLASS 4 – ALLOWED UNSECURED CLAIMS OF INSIDER UNSECURED CREDITORS**

**Description**.  Class 4 consists of the Allowed Claims of Unsecured Creditors who are Insiders of the Debtor, and includes the Claims held by such Insiders for (i) any deficiency portions of any of Secured Claims and (ii) any Claim arising out of the rejection of executory contracts and unexpired leases under, if any.

**Treatment**.  Except to the extent that the holder of an Allowed Class 4 Claim agrees to a different treatment, such holder shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Class 4 Claim, the following treatment as soon as reasonably practical on or after the Effective Date:  The Allowed Claims of Insider Unsecured Creditors in this Class 4 shall be satisfied, on a pro rata basis, from distribution from the Plan Reserve, the Disputed Claims Reserve and/or Other Distributable Proceeds available after the satisfaction in full of the accrued fees and expenses of the Litigation Trust, Administrative Claims, accrued amounts due to holders of Priority Tax Claims, Priority Non-Tax Claims and Class 3 Claims.

**Voting**.  Class 4 is Impaired.  The vote on this Plan by Class 4 is not sought as such vote does not count under section 1129(a)(10) of the Bankruptcy Code.

E.     **CLASS 5 – ALLOWED INTERESTS OF MEMBERS OF DEBTOR**

**Description**.  Class 5 consists of the Allowed Interests of the Debtor's shareholders.

**Treatment**.  Upon the Effective Date, Debtor's shareholder shall retain 100% of the stock in Debtor free and clear of all claims and liens against the Debtor, in consideration for (1) paying $2,750.00 to the Litigation Trustee; and (2) assuming the duty and obligation to prepare, pay all CPA and accounting fees and file with the taxing authorities all federal income tax returns and franchise tax returns due for 2017.  Upon payment of the $2,750.00 Debtor's Shareholder shall assume these duties and shall prepare and file the corporate income tax return for 2016 and 2017 and franchise tax returns for 2016 and 2017 at the Debtor's shareholder's sole expense and without cost or duty to the bankruptcy estate or Litigation Trustee.

Retention of the stock shall result in the shareholder retaining only the corporate entity registered with the Texas Secretary of State, SOS File Number 0154154600, together with Tax Payer Number 17606207185 and its Federal Employer Identification Number, and any Net Operating Losses to which Debtor may be entitled to in the future.  Any corporate income tax refunds for 2016 and 2017 or franchise tax refunds for 2016 and 2017 shall be paid by the Debtor's shareholder to the Litigation Trust up receipt.

In the event the shareholder does not make the $2,750.00 payment by the Effective Date, then the shareholder shall not retain any stock in Debtor.

Holders of Interests shall be entitled to receive a pro rata distribution of proceeds remaining in the Plan Reserve, the Disputed Claims Reserve and/or Other Distributable Proceeds after payment in full of the fees and expenses of the Liquidating Trust, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Claims in Classes 3 and 4.

**Voting**.  Class 5 is Impaired.  Holders of Class 5 Interests are deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code and not entitled to vote on the Plan.

## VIII.   MEANS FOR EXECUTION OF THE PLAN

### A.   FUNDING THE PLAN

The Plan is a liquidating plan and shall be funded from the liquidation and monetization of all other assets, including the Retained Claims, and proceeds thereof as well as any other remaining assets that may be liquidated or otherwise monetized and/or Claims that may be recovered for the benefit of the Bankruptcy Estate. Expenses for soliciting the Plan shall be funded by Okin Adams LLP (the "***Okin Adams Plan Expenses***"), and such expenses shall be considered Trust Expenses.

### B.   RESERVES

As soon as practicable after the Confirmation Date, the following reserves shall be established (the "***Reserves***"):

1.   Admin Claim Reserve. The Admin Claim Reserve shall be established and funded from the proceeds of the sale of the Forge to Hilco, which proceeds are TBK's cash collateral, in an amount sufficient to pay and/or reserve for the payment of Allowed Professional Fee Claims (including Allowed Professional Fee Claims, but subject to the concession provided by the professionals to defer the balance of their Allowed Professional Fee Claims as described in the treatment provided in the Plan for such Claims), U.S. Trustee Quarterly Fees and those Priority Tax Claims and other Administrative Claims that TBK has consented, in writing, to being paid.

2.   Plan Reserve. The Plan Reserve shall be established and funded from any unencumbered cash on hand and/or Other Distributable Proceeds in an amount sufficient to pay and/or reserve for the Administrative Claims (including Professional Fee Claims but subject to the concession provided by the professionals to defer the balance of their Professional Fee Claims as described in the treatment provided in the Plan for such Claims), Priority Tax Claims, the portion of the Priority Non-Tax Claims due on the Effective Date or soon thereafter, and an amount necessary to fund any Administrative Claims and Priority Tax Claims that TBK has not consented, in writing, to being paid, and any Priority Non-Tax Claims, and the costs of the Litigation Trustee and the Brougher Litigation Trust as reasonably determined by the Proponent.

3.      Disputed Claims Reserve.  The Disputed Claims Reserve shall be established as set forth in Article IX.  C of this Plan and funded from unencumbered cash on hand and/or Other Distributable Proceeds.

## C.      APPOINTMENT OF THE LITIGATION TRUSTEE

### 1.      Appointment Of The Litigation Trustee.

There will be one Litigation Trustee under the Plan who will be vested with all the powers of a debtor-in-possession and Chapter 11 trustee.  The Debtor shall, prior to the Confirmation Date, nominate John Baumgartner of Stout Advisory as the Litigation Trustee.  This Litigation Trustee candidate shall be approved at the Confirmation Hearing, and shall thereafter immediately undertake the required duties under the Plan.  The appointment of the Litigation Trustee is to be effective as of the Effective Date.

The selection of any successor Litigation Trustee shall be made by the Bankruptcy Court following a hearing.  The Litigation Trustee shall be empowered to act on behalf of the Brougher Litigation Trust and to carry out the provisions of this Plan.  The Litigation Trustee shall not have an interest that is materially adverse to the Debtor, the Bankruptcy Estate, or the Brougher Litigation Trust.

### 2.      Powers And Duties Of The Litigation Trustee.

The Litigation Trustee shall be deemed to possess the same powers and duties as would a Chapter 11 Trustee consistent with Section 1123(b)(3)(B) of the Bankruptcy Code.  On the Effective Date, the Litigation Trustee shall receive into the Litigation Trust all unadministered property of the Bankruptcy Estate of any kind and nature whatsoever, real, personal, intellectual or otherwise, including specified causes of action, and all proceeds thereof, and any books and records of the Debtor, including any attorney-client privilege, work product privilege, or other privilege or immunity in connection therewith.  The Litigation Trustee shall be empowered and authorized to take or cause to be taken all actions which in his judgment are necessary to secure the effective implementation of the Plan.  The Litigation Trustee will receive all Retained Claims.  The Litigation Trustee shall also be empowered to file claims objections as to all Claims (the "Claims Objections").  The Litigation Trustee will be a representative of the Debtor's Bankruptcy Estate pursuant to Bankruptcy Code section 1123(b)(3) and as such will have the power to prosecute and defend, the Retained Claims and the Claims Objections.  In that regard, the Litigation Trustee shall have the power and authority to perform the following acts:

1.      Distribute available proceeds, including those in the Reserves and/or Other Distributable Proceeds, as specified in Articles VI.   and VII.  of the Combined DS/Plan;

2.      Establish any necessary reserves, including the Admin Claim Reserve, the Plan Reserve and the Disputed Claims Reserve;

3.      Open bank accounts, deposit proceeds and draw checks and make disbursements thereof;

4.      Employ and have such attorneys, accountants, and clerical assistance as may be deemed necessary;

5.      Pay and discharge any costs, expenses, fees or obligations incurred by the Litigation Trustee as are necessary to liquidated any assets of the Bankruptcy Estate, including pursuing the Retained Claims and prosecuting the Claims Objections as provided for herein;

6.      Take any action required or permitted by the Plan;

7.      Sue and be sued with respect to the Retained Claims and the Claims Objections;

8.      Settle, compromise or adjust by arbitration, mediation or otherwise, any Retained Claim or any of the Claims Objections, subject to court approval on an Application to Compromise Controversy if the amount in controversy exceeds $50,000.00;

9.      Enforce the rights under the Accounts for the benefit of the Bankruptcy Estate, and subject to the terms of the TBK APA and Hilco APA, including designate the party(ies) responsible for the collection of the Accounts as described therein, if any; and

10.      In general, without in any manner limiting any of the foregoing, take any action that would be lawful for any person having the duties and responsibilities described in this Plan, whether similar to or different from the ways above specified.

**3.**      **Release.**

The Litigation Trustee will be released and indemnified for all obligations and liabilities of the Debtor, save and except those duties and obligations of the Litigation Trustee set forth in the Plan and those attributable to the gross negligence or willful misconduct of the Litigation Trustee.

**4.**      **Monitoring, Auditing And Bonding.**

The Litigation Trustee will not be required to post bond or be audited or monitored except as otherwise expressly provided herein.

**5.**      **Available Cash.**

All funds collected by the Litigation Trustee and maintained pending distribution, shall be deposited with a bank approved by the Office of the United States Trustee as an approved entity for maintenance of debtor-in-possession bank accounts.

**6.**      **Compensation Of Litigation Trustee And Compensation And Retention Of Professionals.**

1.      The Litigation Trustee shall be entitled to receive compensation for services rendered, which compensation shall be agreed with the Proponent and disclosed in

a filing with the Court. The compensation of the Litigation Trustee will be calculated pursuant to the compensation scheme provided under section 326(a) of the Bankruptcy Code. The Litigation Trustee may receive such compensation without the need for filing fee applications under the Bankruptcy Code or for prior Bankruptcy Court approval. In addition to reasonable compensation, the Litigation Trustee shall be entitled to reimbursement for the actual out-of-pocket expenses incurred.

2.      The Litigation Trustee may also retain agents and professionals. The Litigation Trustee's professionals shall be entitled to reimbursement for out-of-pocket expenses incurred and reasonable compensation for services rendered on the same economic terms as is normal and customary for such professionals. The professionals may receive such compensation without the need for filing fee applications under the Bankruptcy Code or for prior Bankruptcy Court approval.

3.      The Litigation Trustee and all professionals employed by the Litigation Trustee shall be entitled to payment of their post-Effective Date fees and expenses from the Litigation Trust on a monthly basis without further notice to or action or approval of the Bankruptcy Court. However, the fees and costs incurred by the agents and professionals of the Litigation Trustee shall be paid not more frequently than on a monthly basis, out of cash reserved for that purpose by the Litigation Trustee.

## 7.      Resignation.

The Litigation Trustee may resign as such by an instrument in writing signed by the Litigation Trustee and filed with the Bankruptcy Court, provided that the Litigation Trustee will continue to serve as Litigation Trustee after his resignation until the time when appointment of his successor shall become effective. In addition, any creditor or interest holder has the right to petition the Bankruptcy Court to remove the Litigation Trustee for cause as outlined in section 324 of the Bankruptcy Code. In the event of the death, resignation, incompetency, or removal of the Litigation Trustee by order of the Bankruptcy Court, the Bankruptcy Court following a hearing may appoint a successor Litigation Trustee. Every successor Litigation Trustee appointed shall execute, acknowledge and deliver to the Bankruptcy Court and the retiring Litigation Trustee an instrument accepting such appointment, and thereupon such successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers and duties of the retiring Litigation Trustee.

## 8.      Reporting Duties.

Forty-five (45) days after the end of each calendar quarter following confirmation, the Litigation Trustee will file with the Court an unaudited written report and account showing (i) the assets and liabilities at the end of such quarter or upon termination, (ii) any changes in the assets which have not been previously reported, and (iii) any material action taken by the Litigation Trustee in the performance of his or her duties under the under the Plan that has not been previously reported, and (iv) fees of professionals and the Litigation Trustee.

9.       **Termination.**

The Litigation Trustee shall continue to perform his duties until all proceeds in the Plan Reserve and the Disputed Claims Reserve under the Plan and/or Other Distributable Proceeds have been fully distributed and all assets of the Bankruptcy Estate, including Retained Claims and Claims Objections, have been fully liquidated. The Litigation Trustee shall pay all accrued but unpaid fees and expenses of the Litigation Trustee and his professionals, file a Motion to Close the Chapter 11 Case with the Bankruptcy Court, providing notice of same to the Creditors and Interest holders, and distribute any remaining cash in the possession of the Litigation Trustee in accordance with the terms and provisions of Articles VI. and VII. of the this Combined DS/Plan.

D.      **THE LITIGATION TRUST**

1.       **The Brougher Litigation Trust Transfer Date.**

On the Effective Date (such time referred to as the "***Litigation Trust Transfer Date***"), any unadministered property of the Bankruptcy Estate of any kind and nature whatsoever, real, personal, intellectual or otherwise, including causes of action, and all proceeds thereof, and any books and records of the Debtor, including any attorney-client privilege, work product privilege, or other privilege or immunity in connection therewith (the "***Litigation Trust Assets***") shall be transferred to the Litigation Trust, as provided below, which shall be deemed to be the Litigation Trust Transfer Date, for further disposition as provided in this Plan and the Litigation Trust Agreement.

2.       **Establishment of the Brougher Litigation Trust.**

On the Litigation Trust Transfer Date, the Litigation Trust Agreement shall be executed, creating the Brougher Litigation Trust.  The Brougher Litigation Trust shall be established for the sole purpose of receiving the benefit of the ongoing obligations of third parties and liquidating and distributing any remaining assets of the Bankruptcy Estate in accordance with this Plan with no objective to continue or engage in the conduct of a trade or business.  For all federal income tax purposes, all parties shall treat the Brougher Litigation Trust as a liquidating trust pursuant to Treasury Regulations § 301.7701-4(d), and as a grantor trust subject to the provisions of Subchapter J, Part I, Subpart E of the Internal Revenue Code of 1986, as amended, owned by the Beneficiaries (defined below) of the Brougher Litigation Trust as grantors.  The affairs and administration of the Brougher Litigation Trust shall be governed by this Plan, the Confirmation Order, the Brougher Litigation Trust Agreement, any other Final Orders, and applicable bankruptcy and non-bankruptcy law. The Brougher Litigation Trust and the Litigation Trustee shall be vested with all the power and authority granted to a trustee pursuant to section 1106(a) of the Bankruptcy Code.

3.       **Transfer of Estate Property to the Brougher Litigation Trust.**

On the Litigation Trust Transfer Date and after the execution of the Litigation Trust Agreement, all the Litigation Trust Assets shall be transferred to the Brougher Litigation Trust. The Brougher Litigation Trust shall hold the Litigation Trust Assets in its exclusive possession, custody and control for the benefit of holders of Claims entitled to payment under this Plan.  For all federal income tax purposes, the Bankruptcy Estate shall treat the transfer of all of the Litigation

Trust Assets to the Brougher Litigation Trust as a transfer to holders of Claims to the extent such holders are Beneficiaries of the Brougher Litigation Trust.  The Litigation Trustee shall ensure that, for all federal income tax purposes, consistent valuations are used by the Litigation Trustee and the holders of Claims for all property transferred to the Brougher Litigation Trust.

**4.      Transfer Free and Clear of Claims.**

Except as otherwise provided herein, all Litigation Trust Assets transferred to the Brougher Litigation Trust shall be free and clear of all Claims, interests, Liens and encumbrances (other than (i) those assets in the Admin Claims Reserve, which for avoidance of doubt, shall not be free and clear of TBK's liens, and (ii) any other assets on which TBK has a lien), and such property shall remain as property of the Brougher Litigation Trust until distributed pursuant to this Plan.  On the Litigation Trust Transfer Date, a stay of all actions to the same extent as set forth in section 362(a) of the Bankruptcy Code with respect to the Bankruptcy Estate, the Brougher Litigation Trust, and the Litigation Trustee shall be and remain in effect pending consummation of this Plan.  The transfer of assets to the Brougher Litigation Trustee pursuant to this section shall not constitute a default or breach under or result in any forfeiture whatsoever with respect to any asset or property interest transferred to the Brougher Litigation Trust. For the avoidance of doubt, and notwithstanding anything else to the contrary herein or in this Plan, the Confirmation Order, and/or the Litigation Trust Agreement, to the extent TBK has a valid lien on
such assets that will be transferred to the Litigation Trust (including without limitation the assets in the Admin Claims Reserve), such assets shall be transferred to the Litigation Trust expressly subject to TBK's liens.

**5.      Beneficiaries of the Brougher Litigation Trust.**

Upon creation of the Brougher Litigation Trust, holders of Claims in Class 3 (holders of Allowed General Unsecured Claims) shall be Beneficiaries of the Brougher Litigation Trust.

**6.      Distributions from the Brougher Litigation Trust.**

The Litigation Trustee may make interim Distributions to Beneficiaries of the Litigation Trust in accordance with the terms and conditions of this Plan in the exercise of reasonable business judgment.  Upon the liquidation of any remaining assets of the estate, and after the payment of all costs and expenses of collection, the Litigation Trustee must distribute the corpus of the Brougher Litigation Trust to the Beneficiaries of the Brougher Litigation Trust in accordance with their priority and percentage interests in the Litigation Trust.  In the event that all Allowed Claims of the Beneficiaries of the Brougher Litigation Trust are paid in full, with interest, then any remaining cash shall become Available Cash under the Plan.

**7.      Dissolution of the Litigation Trust.**

Except as otherwise provided in the Litigation Trust Agreement, upon the distribution to the Beneficiaries of the Brougher Litigation Trust of all of the rest of the Brougher Litigation Trust, the Litigation Trustee shall file a notice of final distribution with the Court.  Upon the expiration of thirty (30) days after the filing of such notice, if no objection has been received then the Brougher Litigation Trust shall terminate and the Litigation Trustee shall be discharged.

E.     **DISSOLUTION OF THE DEBTOR**

The corporate entity Brougher, Inc. may be continued as set forth in paragraph VI E herein.

In the event Debtor's Shareholder does not perform as set forth in paragraph VI E herein by the Effective Date, the Litigation Trustee is authorized to dissolve the Debtor and file any final tax returns, applicable certificate of dissolution and/or other applicable documents in the applicable state(s) of incorporation for the Debtor, which may be executed by the Litigation Trustee without need for approval by the Debtor's officers, directors, or holders of Interests or need for compliance with non-bankruptcy law, and at such time the Debtor shall thereby dissolve and cease to exist.

F.     **RESIGNATION OF OFFICERS AND DIRECTORS**

Upon the Effective Date, the directors and officers of the Debtor shall be deemed to have resigned, without further action.  Upon the Effective Date, the Litigation Trustee shall be empowered and authorized to act on behalf of the Debtor and to take all such actions and measures as necessary to implement the Plan, which actions or measures would otherwise be taken by an officer or a director of the Debtor.

## IX.     QUARTERLY FEES, RESERVES AND DISTRIBUTIONS

A.     **PAYMENT OF POST-CONFIRMATION QUARTERLY FEES**

The Litigation Trustee shall continue to report to the UST regarding post-confirmation distributions made by the Bankruptcy Estate so that the UST can determine the fees incurred pursuant to 28 U.S.C. §1930(a)(6), and timely pay same until the clerk of the Court closes the Chapter 11 Case.

B.     **PROVISIONS GOVERNING DISTRIBUTION**

1.     **Distributions**.  Any payments or distributions to be made by the Litigation Trustee pursuant to the Plan shall be made to the holders of Allowed Claims in accordance with the terms and provisions of Articles VI.  and VII.  of this Combined DS/Plan.

2.     **Means of Cash Payment**.  Payments of Cash to be made by the Litigation Trustee pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

3.     **Delivery of Distributions**.  Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed); or if the Litigation Trustee has been notified of a change of address, at the address set forth in such notice.

4.     **Time Bar to Cash Payments**.  Checks issued by the Litigation Trustee in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Litigation Trustee by the holder of the Allowed Claim to whom such

check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of delivery of such check.  After such date, the unclaimed property held on account of such voided check or such Claim shall vest in the Bankruptcy Estate free and clear of all claims and interests and shall be made available for distribution to the other holders of Allowed Claims in accordance with the Plan.

C.    **PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS AGAINST DEBTOR**

    1.    **Objection Deadline**.  Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be served and filed no later than ninety (90) days after the Effective Date or twenty (20) days after a particular proof of Claim is filed, whichever is later; provided, however that such deadline may be extended pursuant to a motion filed with the Court by the Litigation Trustee.  Any proof of Claim filed after the Bar Date or for Deficiency Claims or Rejection Claims, after the deadline for filing such claims set forth in this Plan shall be of no force and effect, shall be deemed disallowed, and will not require objection.  All contested Claims shall be litigated to Final Order, *provided, however*, that the Litigation Trustee may compromise and settle any contested Claim by following a Settlement Notice with respect to such settlement in accordance with the procedures described in Article XI.  of the Plan.

    2.    **Responsibility for Objecting to Claims**.  Until the Effective Date, all parties identified by the Bankruptcy Rules may file objections to Claims.  From the Effective Date and beyond, the Litigation Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtor prior to the Effective Date.

    3.    **No Distribution Pending Allowance**.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any contested Claim unless and until such contested Claim becomes an Allowed Claim.  A reserve for the amount of the contested Claim shall be maintained until the Claim is decided.

    4.    **Administration of Contested Claims**.

        (a)    **Disputed Claims Reserve**.  In determining the amount of distributions to be made under the Plan to holders of Allowed Claims, the appropriate distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan.  To protect the interests of holders of contested Claims, the Disputed Claims Reserve shall be established on the Effective Date.  The Litigation Trustee shall fund the Disputed Claims Reserve with unencumbered cash and/or Other Distributable Proceeds in an amount that represents the Pro Rata Share of the Cash that would otherwise be distributed to holders of contested Claims if such Claims were Allowed.

(b) **Distribution After Allowance**.  As soon as practicable after a contested Claim becomes an Allowed Claim, the holder of an Allowed Claim shall receive a distribution in an amount equal to the aggregate of all the distributions that such holder would have received had such contested Claim been an Allowed Claim on the Effective Date.  Distributions to each holder of a contested Claim, to the extent that such Claim becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such Claim belongs.  The Litigation Trustee shall have the right to make or direct the making of all interim distributions to the holders of Allowed Claims.  No interest shall be paid on account of a contested Claim that later becomes an Allowed Claim.

(c) **Distribution After Disallowance**.  If and when a contested Claim becomes a Disallowed Claim, the Pro Rata Share of the distributions to which each holder is entitled shall increase commensurately.  Accordingly, the Litigation Trustee, in his sole discretion, shall have the right to make or direct the making of any subsequent distributions.

## X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The occurrence of each of the following events shall be a separate condition to the Effective Date, which conditions may be waived, in whole or in part, by an order of the Bankruptcy Court.

### A. ENTRY OF CONFIRMATION ORDER

The Confirmation Order shall have been signed by the Court and duly entered on the Court's docket in form and substance acceptable to the Debtor, and shall include, among other things, findings of fact and/or conclusions of law that:

1. approve the terms of the Plan, as it may be amended or modified, and all other agreements contemplated by the Plan;

2. reserve the jurisdiction of the Bankruptcy Court in accordance with Article XIV. below; and

3. provide, pursuant to § 1125(e), that persons who have solicited acceptances or rejections of the Plan have acted in good faith and in compliance with the provisions, and are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### B. FINALITY OF CONFIRMATION ORDER; WAIVER

The Confirmation Order, in form and substance satisfactory to Debtor, shall either have become a Final Order, or such condition shall have been waived by an order of the Bankruptcy Court.

C.      THE RESERVES

The Reserves to be established under the Plan have been funded in accordance with the Plan.

## XI.     PRESERVATION OF RETAINED CLAIMS AND VESTING

*Vesting*.  The Bankruptcy Estate shall remain open after Confirmation of the Plan (a) to permit the Litigation Trustee to prosecute any Retained Claims, including Avoidance Actions and other lawsuits of the Bankruptcy Estate, to final conclusion, (b) to permit the Litigation Trustee in interest to prosecute to conclusion all claims objections, (c) to permit the Litigation Trustee to liquidate any remaining assets not sold pursuant to the Sale, and (d) and to make final distributions to all creditors as provided for in this Plan, including the U.S. Trustee fees through the closing of the case.

*Retention and Enforcement of Causes of Action.*  Except as otherwise provided in the Plan, all causes of action that the Debtor and its estates may hold against any person or entity shall be retained by the Debtor's Bankruptcy Estate among the Retained Claims and shall be investigated and may be prosecuted by the Litigation Trustee after the Effective Date.  The Court shall have the jurisdiction to hear such Retained Claims. Any creditor that is subject to an avoidance action may have an unsecured claim if and to the extent any transfer is returned to the Debtor's Bankruptcy Estate.

The investigation into the Retained Claims has not been completed.  Accordingly, any and all Retained Claims that may exist against any person or entity may be pursued by the Litigation Trustee, regardless of whether, or the manner in which, such Retained Claims are identified in the DS/Plan.  The failure to identify a Retained Claim in the DS/Plan shall not constitute a waiver or release of any such Retained Claim.

For the avoidance of doubt, the Litigation Trustee will prosecute all Retained Claims for the benefit of Creditors including, without limitation, the following Retained Claims, counterclaims, defenses and causes of action:

1.      All Claims, counterclaims, defenses, causes of action and potential Claims, counterclaims, defenses, and causes of action held by the Debtor or its Estate as of the Effective Date, whether or not previously asserted, are preserved under the Plan for the benefit of the Litigation Trust.  The Debtor, and the Liquidating Trustee, as the case may be, expressly reserve and preserve all rights to supplement at any time any and all retained Claims, counterclaims, defenses, and causes of action, including, without limitation, those described hereinafter, whether based on the results of prior, ongoing, or future investigations or otherwise.

2.      All Claims, counterclaims, defenses, and causes of action referenced in the Plan.

3.      All other counterclaims and defenses, including, without limitation, rights of setoff and recoupment, and all defenses of the estate under 11 U.S.C. § 558.

4.      All Claims and causes of action asserting alter ego, corporate veil piercing, or reverse veil piercing.

5.   All Claims and causes of action alleging generalized harm to the Estate, as referred to in judicial precedents such as *Schimmelpenninck v. Byrne (In re Schimmelpenninck),* 183 F.3d 347 (5th Cir. 1999).

6.   All Claims and causes of action asserting equitable, declaratory, or injunctive relief.

7.   All Claims, counterclaims, defenses, and causes of action for, without limitation, Avoidance Actions, commercial torts, tortious interference with contractual or business relations, unfair competition, breach of contract, accounts, accounts receivable, unjust enrichment, money had and received, embezzlement, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers arising other than under the Bankruptcy Code, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported claims, liens and/or security interests, injury to property and/or title to property, negligence, gross negligence, recklessness, willful misconduct, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions, improper use of information to gain improper advantage, and actions seeking affirmative recoveries, and other, similarly grounded Claims, counterclaims, defenses, and causes of action against, without limitation, current and/or former shareholders, members, equity interest holders, debt holders, partners, prospective joint venture participants, joint venture participants, prospective contracting parties, contracting parties, account debtors, prospective purchasers, purchasers, prospective sellers, sellers, directors, officers, managers, employees, agents, lenders, contractors, insurers, sureties, investment bankers, consultants, advisors, representatives, competitors, vendors, and other creditors of the Debtor and/or entities affiliated with or otherwise related to any of the foregoing.

8.   All Claims, counterclaims, defenses, and causes of action against any and all former managers, officers, directors or employees of the Debtor including, but not limited to, avoidance actions, commercial torts, tortious interference with contractual or business relations, unfair competition, breach of contract, accounts, accounts receivable, unjust enrichment, money had and received, embezzlement, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers arising other than under the Bankruptcy Code, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported claims, liens and/or security interests, injury to property and/or title to property, negligence, gross negligence, recklessness, willful misconduct, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions,

improper use of information to gain improper advantage, and actions seeking affirmative recoveries, and other, similarly grounded Claims, counterclaims, defenses, and causes of action.

Any and all Retained Claims shall survive entry of the Confirmation Order for the benefit of the Debtor's Bankruptcy Estate and, on and after the Effective Date, for the benefit of the Litigation Trust and its beneficiaries.

***Prosecution and Settlement of Retained Claims and Objections to Claims***.  After the Confirmation Date, the Litigation Trustee shall be authorized to commence or continue any suit or other proceeding for the enforcement of any Retained Claim which the Debtor had or had power to assert immediately prior to the Effective Date. The Litigation Trustee may also, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, settle and compromise any and all Retained Claims and any objections to Claims, in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Retained Claim or objection to a Claim originally asserted in an amount equal to or less than $50,000.00, then the Litigation Trustee may settle the Retained Claim or objection to Claim and execute necessary documents, including a stipulation of settlement or release; and (ii) if the resulting settlement involves a Retained Claim or objection to a Claim originally asserted in an amount exceeding $50,000.00, then the Litigation Trustee shall be authorized and empowered to settle such Retained Claim or objection to Claim only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and by filing a notice of settlement (a "***Settlement Notice***").  The Debtor shall serve a copy of the Settlement Notice on the twenty largest Unsecured Creditors and any parties requesting notice in the Debtor's Bankruptcy case by email.  If no party files an objection to the Settlement Notice within ten (10) days after the Settlement Notice is filed, the proposed settlement shall be deemed approved without further order of the Court.  If an objection to the Settlement Notice is timely filed, the Litigation Trustee shall set the matter for hearing and seek court approval of the Settlement.

## XII.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under § 365, the Debtor has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired leases. If the Debtor rejects an executory contract or unexpired lease that was entered into before the Filing Date, it will be treated as if it had been breached on the date immediately preceding the Filing Date, and the other party to the agreement may assert a General Unsecured Claim in Class 3 (or Class 4 if the claimant is an Insider) for damages incurred as a result of the rejection.  In the case of rejection of employment agreements and real property leases, damages are subject to certain limitations imposed by applicable sections of the Bankruptcy Code.  Debtor is unaware of any contracts that need to be rejected under the Plan.

The Plan constitutes a motion to reject any executory contracts to which the Debtor is a party listed on Bankruptcy Schedule G and not otherwise assumed or subject to a pending assumption motion or rejected pursuant to a Final Order.  If the rejection by the Debtor pursuant to the Plan or otherwise of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely proof of Claim or a proof of Claim that is deemed to be filed

timely under applicable law, then such Claim will be forever barred and unenforceable against the Debtor's Bankruptcy Estate, unless a proof of Claim is filed with the clerk of the Court and served on counsel for the Proponent within thirty (30) days after entry the Confirmation Order.

## XIII.   MODIFICATIONS AND AMENDMENTS

The Proponent may alter, amend, or modify the Plan or any Exhibits thereto under § 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Effective Date, the Debtor may, under § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## XIV.   RETENTION OF JURISDICTION

Under 11 U.S.C. §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and passage of the Consummation Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interest;

B.   Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims or Priority Claims;

C.   Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

D.   Effectuate performance of and payments under the provisions of the Plan;

E.   Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

F.   Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

G.   Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.   Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

I.   Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J.   Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

K.   Hear and determine all adversary proceedings and related matters filed by or on behalf of the Litigation Trustee including all Retained Claims, to the extent provided for by applicable law.

L.   Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

M.   Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146;

N.   Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

O.   Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

P.   Enter a final decree closing the Debtor's Bankruptcy Case.

## XV.   EFFECTS OF CONFIRMATION

### A.   BINDING EFFECT

The Plan shall be binding upon all present and former holders of Claims and Interests and their respective successors and assigns.

### B.   EXCULPATION AND LIMITATION OF LIABILITY

1.   Neither the Debtor's Bankruptcy Estate, the Debtor, nor the Litigation Trustee will have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or

affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, the Debtor's Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their fraud, gross negligence, or willful misconduct or as provided by the Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

2.     No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor's Bankruptcy Estate, the Debtor, or the Litigation Trustee, for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except as provided by the Plan or by law.

3.     Notwithstanding anything to the contrary in Article XV. B. of this Plan, no exculpation or limitation of liability is being provided to any acts or omissions (i) made prior to the Filling Date or (ii) that relate to funds paid by the Debtor out of TBK's cash collateral without TBK's consent.

## C.     DISCHARGE

This is a liquidating Plan, and the Debtor does not intend to engage in operations after Confirmation of the Plan. Therefore, there shall be no discharge granted in this case.

## XVI.   MISCELLANEOUS PROVISIONS

*Severability of Plan Provisions*.  If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of a party in interest, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

*Successors and Assigns*.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

*Consummation of Plan*.  The Confirmation Order shall include (a) a finding by the Bankruptcy Court that FED. R. CIV. P. 62(a) shall not apply to the Confirmation Order; and (b) the Bankruptcy Court's authorization for the Proponent to consummate the Plan immediately after entry of the Confirmation Order.

*Governing Law.* Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (i) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, and (ii) corporate governance matters shall be governed by the laws of the state of incorporation, without giving effect to the principles of conflicts of law thereof.

## XVII.  CONFIRMATION OF THE PLAN

### A.    VOTING PROCEDURES AND REQUIREMENTS

The Proponent is providing copies of this Combined Disclosure Statement and Plan and Ballots to all known holders of Impaired Claims who are entitled to vote on the Plan.

Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims against the Debtor that are "Impaired" under the terms and provisions of the Plan and entitled to receive a Distribution thereunder are entitled to vote to accept or reject the Plan. Accordingly, Classes of Claims or Interests that are not Impaired under the terms and provision of the Plan are *not* entitled to vote on the Plan. In addition, Classes of Claims or Interests that are not entitled to a Distribution under the terms and provisions of the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Under the Plan, holders of Claims in Classes 3 and 4 are, or may be determined to be, Impaired. Classes 3 is entitled to vote. Class 4's vote is not counted. Class 1 and 2 are not Impaired and are deemed to have accepted the Plan. Class 5 is Impaired and deemed to reject the Plan. The following voting procedures (the "***Voting Procedures***") have been established with respect to the amount and classification of Claims and Interests, and the determination of the validity of Ballots submitted, for voting purposes:

Unless otherwise provided below, a claim will be deemed temporarily allowed for voting purposes in an amount equal to (i) if a timely filed proof of claim has not been filed, the amount of such claim as set forth in the schedules of assets and liabilities, filed by the Debtor or (ii) the amount of such claim as set forth in a timely filed proof of claim.

If a claim is deemed allowed in accordance with the Plan, such claim will be allowed for voting purposes in the deemed allowed amount set forth in the Plan.

If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court.

Ballots that are otherwise validly executed but do not indicate either acceptance or rejection of the Plan will not be counted.

Only Ballots that are timely received with signatures will be counted. Unsigned ballots will not be counted.

Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will be counted.

Ballots that are illegible, or contain insufficient information to permit the identification of the creditor, will not be counted.

If a creditor simultaneously casts inconsistent duplicate ballots, with respect to the same claim, such ballots shall not be counted.

Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots shall be determined by the Bankruptcy Court at the Confirmation Hearing.

**IN ORDER TO BE COUNTED, EXCEPT TO THE EXTENT THE DEBTOR SO DETERMINES OR AS PERMITTED BY THE BANKRUPTCY COURT PURSUANT TO BANKRUPTCY RULE 3018, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE RECEIVED NO LATER THAN 5:00 P.M., ON JUNE 29, 2017 AT THE FOLLOWING ADDRESS:**

OKIN ADAMS LLP
Attn:  Christopher Adams
Email: cadams@okinadams.com
1113 Vine St., Suite 201
Houston, Texas  77002
Tel: (713) 228-4100
Fax: (888) 865-2118
COUNSEL FOR THE DEBTOR

**BALLOTS WILL BE ACCEPTED BY REGULAR MAIL, FACSIMILE OR EMAIL**

As mentioned above, if your Ballot is not signed and returned as described, it will not be counted.  If your Ballot is damaged or lost, or if you do not receive a Ballot, you may request a replacement by addressing a written request to Debtor's counsel at the above address by regular mail, facsimile or email.  Please follow the directions contained on the Ballot carefully.

The process of soliciting acceptance of the Plan must be fair and open without outside influence in the form of representations, inducements or duress of any kind.  To the extent that you believe solicitation of your vote from any party is being sought outside of the judicially-approved and statutorily-defined disclosure requirements and Voting Procedures, please contact counsel for the Debtor.

**B.     ACCEPTANCE**

Acceptance of the Plan requires that each Impaired Class of Claims or Interests (as classified therein) accepts the Plan, with certain exceptions hereinafter discussed below. Thus, acceptance of the Plan requires acceptance by each of the Impaired Classes.

Classes of Claims and Interests that are Unimpaired under the Plan are deemed to have accepted the Plan.  Acceptances of the Plan are being solicited only from those persons who hold Claims or Interests of Impaired Classes.

The Bankruptcy Code defines acceptance of the Plan by a Class of Claims as acceptance by the holders of at least two-thirds (2/3) in dollar amount and a majority in number of Claims of that class, but for that purpose, only those Claims, the holders of which actually vote to accept or reject the Plan, are counted.

## C.    ACCEPTANCE OR REJECTION OF THE PLAN

*Classes Entitled to Vote.*  Each Impaired Class of Claims or Interests that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  Ballots shall be cast and tabulated with respect to Claims against and Interests in the Debtor's Bankruptcy Estate.  By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.  Classes 1 and 2 are not Impaired and deemed to have accepted the Plan.  Classes 3, 4 and 5 are Impaired.  Class 3 is entitled to vote.  The vote of Class 4 is not counted under Section 1129(a)(10) of the Bankruptcy Code.  Class 5 is Impaired and deemed to reject the Plan.

*Acceptance or Rejection by Impaired Classes.*  An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and (ii) the holders (other than any holder designated under § 1126(e)) of more than one half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  A Class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such Class do not entitle the holders of Claims or Interests in such Class to receive or retain any property under the Plan on account of such Claim or Interest.

*Cramdown.*  The Debtor will request Confirmation of the Plan, as it may be modified from time to time, under § 1129(b) ("***Cramdown***").

## D.    CONFIRMATION OF THE PLAN

To confirm the Plan, § 1129 requires the Bankruptcy Court to make a series of determinations concerning the Plan, including, without limitation: (i) that the Plan has classified Claims and Interests in a permissible manner; (ii) that the contents of the Plan complies with the technical requirements of the Bankruptcy Code; (iii) that the Debtor has proposed the Plan in good faith; and (iv) that the Debtor has made disclosures concerning the Plan which are adequate and include information concerning all payments made or promised in connection with the Plan and the Debtor's Bankruptcy Case.  The Debtor believes that all of these conditions have been or will be met with respect to the Plan.

The Bankruptcy Code requires that, unless the Cramdown provisions of the Bankruptcy Code (as discussed below) are utilized, as a condition precedent to confirmation, the Plan be accepted by the requisite votes of each Class of Claims and Interests voting as separate Classes. Therefore, the Bankruptcy Court must find, in order to confirm the Plan, that the Plan has been duly accepted.  In addition, the Bankruptcy Court must find that the Plan is feasible and that the Plan is in the "best interests" of all holders of Claims and Interests.  Thus, even if holders of Claims were to accept the Plan by the requisite number of votes, the Bankruptcy Court is still required to

make independent findings respecting the Plan's feasibility and whether the Plan is in the best interests of holders of Claims and Interests before it can confirm the Plan.

## E.    THE BEST INTERESTS TEST

Whether or not the Plan is accepted by each Impaired Class of Claims entitled to vote on the Plan, in order to confirm the Plan the Bankruptcy Court must independently determine, pursuant to § 1129(a)(7), that the Plan is in the best interests of each holder of an Impaired Claim or Interest that has not voted to accept the Plan.  This requirement is satisfied if the Plan provides each non-accepting holder of a Claim or Interest in such Impaired Class a recovery on account of such holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the Distribution each such holder would receive in a liquidation of the Debtor under Chapter 7. This requirement is commonly referred to as the "Best Interests of Creditors Test." This Plan satisfies the test.

Indeed, the Plan provides the possibility for a greater recovery to the creditors than such creditors would receive under a liquidation pursuant to chapter 7. The Litigation Trustee will be able to pursue the Retained Claims, including Avoidance Actions, and the collection of the Accounts in a cost-effective manner, while in a chapter 7 the Debtor's estate would be burdened with an additional layer of administrative expense associated with the appointment of a chapter 7 trustee, and retention of professionals attendant thereto. The Plan, in essence, increases the efficiency of administrating the Debtor's assets for the benefit of its creditors.

Additionally, holders of Class 3 and 4 Claims and of Class 5 Interests would not receive any distribution in a chapter 7 liquidation based on the cash held by Estate as of the date of this Combined DS/Plan, as it is insufficient to pay creditors of a higher liquidation priority.  To the extent additional recoveries are made to the Estate and/or the Litigation Trust in excess of the amount required to pay all Class 1 and 2 and Allowed Administrative Claims, such would be paid to Allowed Class 3 Claims and Class 4 Claims in accordance with their subordinated priority. Thus, holders of Class 3 and 4 Claims and Class 5 Interests are not receiving less under the Plan than they otherwise would.

Moreover, in chapter 7 cases, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtor, due to the Sale of substantially all of its assets, has already liquidated most of its assets, has collected the proceeds thereof including the cash used to fund the Plan, and has already incurred many of the expenses associated with the foregoing.  Accordingly, the Proponent believes that there is a reasonable likelihood in a chapter 7 scenario that holders of Allowed Claims would have to pay doubly for the funds accumulated in the Estate, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed.

It is also anticipated that a chapter 7 liquidation would result in delay in the distributions to holders of Allowed Claims.  Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the case to chapter 7.  Thus, a chapter 7 liquidation would not only delay distributions, but raise the prospect of additional Claims that were not asserted in the Bankruptcy Case.

In short, the Plan presents a superior alternative to a chapter 7 liquidation.  Creditors' potential recovery under the Plan is not expected to be less than what could be obtained in a hypothetical chapter 7 liquidation.  The analysis outlined above and the circumstances of the case leads the Proponent to believe that the recovery in a chapter 7 scenario might be limited to the funds from those available in the Estate as of the date of the Combined DS/Plan.  This is because there are no material tangible assets remaining to liquidate and any recovery is expected to come from the prosecution of the Retained Claims and the collection of the Accounts.  By putting in place a Litigation Trustee to investigate and, if viable, pursue the Retained Claims, the Plan makes it more likely that the causes of action will be liquidated to generate additional recovery to the estate.  As such, it is more likely that a higher recovery can be obtained under the Plan than in a hypothetical chapter 7 scenario and, even if it were ultimately in the form of low value recoveries in settlement of claims, such recoveries would be better than (and certainly no worse) than the expected result in a chapter 7. For additional information see the Liquidation Analysis attached as Exhibit 2 to this Combined Plan/DS.

Based on the foregoing, the Plan provides an opportunity to bring the greatest return to creditors.

## F.   FEASIBILITY

The Plan is a liquidating plan, and the proceeds of the liquidation of the Debtor's assets shall be distributed to satisfy the claims of creditors to the extent possible.

## XVIII.   DISCLAIMERS

*The Proponent has No Duty to Update*.  The statements contained in this Combined Disclosure Statement and Plan are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Combined Disclosure Statement and Plan after that date does not imply that there has been no change in the information set forth herein since that date.  The Proponent has no duty to update this Disclosure Statement and Plan unless otherwise ordered to do so by the Bankruptcy Court.

*Source of Information*.  Counsel for the Committee has relied on pleadings filed in the Bankruptcy Case and Counsel for Debtor has relied upon information provided by the Debtor in connection with the preparation of this Combined Disclosure Statement and Plan.  Although counsel has performed certain limited due diligence in connection with preparing this Combined Disclosure Statement and Plan, no independent verification of the information contained herein has been performed.

*No Legal or Tax Advice Provided*.  The contents of this Combined Disclosure Statement and Plan should not be construed as legal, business or tax advice.  Each creditor or holder of an Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest.

*This Combined Disclosure Statement and Plan is Not Legal Advice to You*.  This Combined Disclosure Statement and Plan may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

*No Admission Made*.  Nothing contained herein shall constitute an admission of any fact or liability by any party (including, without limitation, the Proponent) or be deemed evidence of the tax or other legal effects of the Plan on the Proponent or on holders of Claims or Interests.

*No Regulatory Agency Approval*.  No governmental or other regulatory agency approvals have been obtained as of the date of the mailing of the Combined Disclosure Statement and Plan.

## XIX.   CONCLUSION AND RECOMMENDATION

The Proponent believes that Confirmation of the Plan is desirable and in the best interests of all holders of Claims and Interests.  The Proponent therefore urges you to vote to accept the Plan and to evidence such acceptance by returning the Ballot(s) so they will be <u>received</u> by the Voting Deadline.

Dated July 12, 2017.

**OKIN ADAMS LLP**

By:  */s/ Christopher Adams*
Christopher Adams
TBN: 24009857
1113 Vine St., Suite 201
Houston, Texas 77002
Tel: (713) 228-4100
Fax: (888) 865-2118
cadams@okinadams.com
**ATTORNEY IN CHARGE**
**FOR DEBTOR**