IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Brougher, Inc., ) | |
| ) | Case No. 16-35575 |
| Debtor. ) | |

**TBK BANK, SSB'S MOTION FOR ALLOWANCE OF SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 507(B)**

**NOTICE UNDER BLR 9013**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

TBK Bank, SSB ("TBK"), by and through its undersigned attorneys, files its *Motion for Allowance of Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 507(b)* (the "Motion"), and in support of its Motion, TBK respectfully states as follows:

**I.
INTRODUCTION**

1.   TBK seeks allowance of a superpriority administrative expense claim under 11 U.S.C. § 507(b) for the use of its Cash Collateral and/or any diminution in the value of its

Prepetition Collateral.[1] TBK allowed the use of its Cash Collateral pursuant to a Cash Collateral Order, which granted TBK a superpriority administrative expense under 11 U.S.C. § 507(b) under certain conditions. Such use of Cash Collateral was an actual and necessary cost and expense of preserving the estate pending the sale of the Debtor's assets and confirmation of the Debtor's chapter 11 plan. While TBK was granted Replacement Liens on the assets of the estate, such Replacement Liens proved insufficient to adequately protect the value of TBK's Prepetition Collateral. Accordingly, TBK seeks allowance of an administrative superpriority expense claim pursuant to section 507(b) of the Bankruptcy Code in an amount not less than $854,959.43.

## II.
## JURISDICTION, VENUE AND CONSTITUTIONAL AUTHORITY TO ENTER A FINAL ORDER

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (M). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Court has constitutional authority to enter a final order in this matter and has retained exclusive jurisdiction over all matters arising out of these chapter 11 cases under Article XIV of the *Debtor's Third Amended Combined Disclosure Statement and Plan of Liquidation* (the "Plan"). The statutory basis for the relief requested in this Motion is 11 U.S.C. § 507(b).

## III.
## FACTUAL BACKGROUND

3. On November 2, 2016 (the "Petition Date"), Brougher, Inc. d/b/a Forge USA (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing this case.

---

[1] All capitalized terms used herein but not otherwise defined shall have the meanings given to such terms in the Cash Collateral Order (defined below).

4. On January 13, 2017, the Court entered its *Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection to TBK Bank, SSB* (the "Cash Collateral Order") [Dkt. No. 75].

5. Paragraph 4 of the Cash Collateral Order provides, in part, that TBK's loans to the Debtor "are secured by liens on substantially all of the Debtor's assets . . . ." Cash Collateral Order, ¶ 4.

6. Paragraph 8 of the Cash Collateral Order further provides as follows:

As adequate protection **with respect to the Debtor's use of Cash Collateral and/or any diminution in the value of the Prepetition Collateral**, in accordance with sections 361(2), 363(c)(2), 363(e) and 507(b) of the Bankruptcy Code, the Debtor hereby grants to TBK and the Court hereby orders that TBK shall have:

(a) valid, perfected, and enforceable replacement liens on and first priority Postpetition security interests in (the "Replacement Liens") all assets of the Debtor and the Debtor's estate, whether now owned or hereafter acquired (provided that assets shall not include any claims or causes of action pursuant to chapter 5 of the Bankruptcy Code or any claims or causes of action that the Debtor or the Debtor's estate may have against TBK), and all proceeds, products, offspring, rents and profits thereof acquired by the Debtor after the Petition Date (collectively, the "Postpetition Collateral"), which shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative in the chapter 11 case or any subsequent proceedings under the Bankruptcy Code (including any chapter 7 case), and any security interest or lien of any creditor or other party in interest in the chapter 11 case other than valid and enforceable pre-existing liens, if any, that are senior to those of TBK as of the Petition Date or as set forth in this Agreed Order . . . ; and

(b) **allowed administrative superpriority expense claim** (as defined in and provided for in paragraph 11 below).

Notwithstanding the foregoing and for purposes of clarification, no Replacement Lien shall prime or be senior to any lien or security interest that would, under applicable law, be senior to or outrank TBK's pre-petition liens and security interests in the Prepetition Collateral. The obligations arising under this paragraph 8 are referred to herein as the "Adequate Protection Obligations." The Replacement Liens granted hereby shall be in addition to all security interests and liens now existing in favor of TBK and not in substitution therefore or limitation thereof, and shall be effective as of the Petition Date.

*Id.*, ¶ 8 (emphasis added).

    7.      Paragraph 11 of the Cash Collateral Order continues:

> **To the extent that the Replacement Liens prove insufficient** to provide TBK with adequate protection, **TBK shall hereby be afforded an allowed administrative superpriority expense claim** (the "Superpriority Claim") **pursuant to section 507(b)** of the Bankruptcy Code **in the full amount of the Adequate Protection Obligations**, if any, with priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor and any successor trustee or any creditor in the Debtor's case or any subsequent proceedings under the Bankruptcy Code, *provided, however*, that such Superpriority Claim shall not take priority over the fees assessed against the estate under chapter 123 of title 28 of the United States Code.

*Id.*, ¶ 11 (emphasis added).

    8.      According to the Debtor's *Schedules of Assets and Liabilities* (the "Schedules") [Dkt. No. 39] filed in this case, the Debtor had the following assets (among others), all of which were subject to TBK's liens:

**Table 1: Prepetition Collateral**[2]

| Collateral | Value per Schedules | TBK Comment |
|---|---|---|
| Cash at BBVA Compass Bank | $188,231.63[3] | Upon information and belief, as of the Petition Date, the amount in the BBVA Compass Account was actually $346,329.02.[4] |
| Forge Shop Equipment | $1,207,800.00[5] | |
| **TOTAL** | $1,396,031.63 | $1,554,129.02 (including the above corrected BBVA amt.) |

---

[2] In addition to these assets, the Debtor also listed the following assets on its Schedules (with corresponding Petition Date values: (a) accounts receivable ($993,593.00); (b) steel ($452,416.17); (c) work in progress ($320,955.02) and (d) finished goods ($399,838.13). TBK reserves its right to supplement and/or amend this Motion to include these items in its superpriority administrative expense claim based on diminution.

[3] Dkt. 39, line 3.1.

[4] At some point after the Petition Date, the account at BBVA Compass was closed and the funds in the BBVA Compass account were placed into an account at Frost Bank.

[5] Dkt. 29, line 50.

9.      Taking into account the actual amount in the BBVA Compass Bank as of the Petition Date, the value of the assets listed in Table 1 above (as based on the Debtor's Schedules) was $1,554,129.02, as of the Petition Date.  TBK was granted valid, perfected, and enforceable replacement liens on and first priority postpetition security interests in these assets as adequate protection with respect to the Debtor's use of the cash collateral and/or any diminution in the value of the assets.  *See* Cash Collateral Order, ¶ 8.

10.     Thereafter, on March 3, 2017, the Court entered an order authorizing the sale of the Forge Shop Equipment to Hilco Industrial, LLC ("Hilco") for $650,000.00.  Dkt. No. 99. TBK has not received any of the above cash and/or any of the Hilco proceeds on account of its secured claim (to which it was granted Replacement Liens),[6] and on information and belief, a mere $141,369.59 remains in Debtor's Frost Bank account (at least as of July 24, 2017).[7] Rather, the Hilco proceeds and the original cash in the BBVA Compass account were spent on various administrative claims and fees.

11.     Thus, even taking the lower Hilco sales price of $650,000.00 into account (as opposed to the Debtor's own Petition Date value of $1,207,800.00) and the expenditure of the $346,329.02 in the BBVA Compass account, TBK's Cash Collateral has diminished by no less than $854,959.43.[8]

---

[6] TBK was granted Replacement Liens on all assets of the Debtor and the Debtor's estate, whether now owned or hereafter acquired (except chapter 5 causes of action).  *See* Cash Collateral Order, ¶ 8.

[7] On June 7, 2017, the Court entered an order authorizing TBK to apply $908,244.88 in Restricted Account No. 4498069 at TBK, and $296.33 in Account No. 4498028 at TBK against the Debtor's debt to TBK.  *See* Dkt. No. 129.  Upon information and belief, the funds in the accounts at TBK were the proceeds of accounts receivable generated from the sale of TBK's collateral, and such funds were not the cash from the BBVA Compass account in Table 1 or the Hilco proceeds.  There are no additional funds in the Debtor's accounts at TBK.

[8] TBK calculates this amount as follows:  $650,000.00 (Hilco proceeds) + $346,329.02 (BBVA cash) - $141,369.59 (remaining cash) = $854,959.43.  TBK's diminution claim substantially increases if the Debtor's own Petition Date value estimates are used, and TBK reserves the right to supplement and/or amend this Motion to seek such higher amounts.  Additionally, to the extent any of the remaining $141,369.59 is expended, TBK asserts a superpriority administrative expense claim for such amounts.

## IV.
## LEGAL AUTHORITIES IN SUPPORT OF THE RELIEF SOUGHT

12. Pursuant to Paragraph 11 of the Cash Collateral Order, TBK was afforded an allowed superpriority administrative expense claim (the "Superpriority Claim") under section 507(b) of the Bankruptcy Code to the extent that the Replacement Liens granted to TBK proved insufficient.[9]

13. Those Replacement Liens have in fact proved to be insufficient. As set forth above in Table 1, the value of the Debtor's assets Table 1 on the Petition Date was $1,554,129.02 (or at minimum, $996,329.02 if one attributes the Hilco sales price as the Petition Date value of the machine shop equipment).

14. Pursuant to Paragraph 11 of the Cash Collateral Order, the amount of such Superpriority Claim is to be in the full amount of the Adequate Protection Obligations. The Adequate Protection Obligations are defined in Paragraph 8 of the Cash Collateral Order and refer to the Debtor's use of Cash Collateral and/or any diminution in the value of the Prepetition Collateral.

15. In sum, if there is diminution in the value of TBK's Prepetition Collateral that is not compensated by the value of the Replacement Liens, TBK is entitled to a superpriority administrative expense claim under 11 U.S.C. § 507(b).

16. The Fifth Amendment's Takings Clause prohibits the taking of "private property . . . for public use, without just compensation." U.S. CONST. AMEND. V. The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935).

---

[9] TBK was granted Replacement Liens on all assets of the Debtor and the Debtor's estate, whether now owned or hereafter acquired (except chapter 5 causes of action). *See* Cash Collateral Order, ¶ 8.

17. The concept of adequate protection is derived from the Fifth Amendment protection of property interests as enunciated by the Supreme Court. *Ultimate Sportsbar, Inc. v. United States*, 48 Fed. Cl. 540, 2001 U.S. Claims LEXIS 11 (2001) (citing *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273 (1940)); *Radford*, 295 U.S. at 555.

18. Section 507(b) of the Bankruptcy Code provides:

> (b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

19. Notwithstanding the adequate protection provided by the Cash Collateral Order (namely, the Replacement Liens), TBK has a claim allowable under 11 U.S.C. § 507(a)(2), which refers to administrative expenses allowed under 11 U.S.C. § 503(b). 11 U.S.C. § 507(a)(2). TBK has an allowable administrative expense under 11 U.S.C. § 503(b) because the use of TBK's Prepetition Collateral was an actual, necessary cost and expense of preserving the estate. *See* 11 U.S.C. § 503(b)(1)(A). Indeed, without the use of TBK's cash collateral, the Debtor would have been unable to remain in chapter 11, which resulted in a confirmed chapter 11 plan that proposes to pay distributions to unsecured creditors.

20. Furthermore, TBK's allowable administrative expense under 11 U.S.C. § 503(b) arose from the use, sale, or lease of TBK's Prepetition Collateral under section 363 of the Bankruptcy Code.

For the reasons set forth herein, TBK respectfully requests that the Court enter an order (a) granting TBK an allowed administrative superpriority expense claim pursuant to section 507(b) of the Bankruptcy Code in an amount not less than $854,959.43, with priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, and (b) granting such other and further relief as the Court deems just and proper.

Dated:  September 11, 2017

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Kristian W. Gluck*
Kristian W. Gluck
TX Bar No. 24038921
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

and

Jason L. Boland
TX Bar No. 24040542
1301 McKinney Street, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

*Attorneys for TBK Bank, SSB*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served via the Court's CM/ECF system to all parties registered to receive such service on September 11, 2017.

 */s/ Kristian W. Gluck*
Kristian W. Gluck

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **Brougher, Inc.,** ) | |
| ) | **Case No. 16-35575** |
| Debtor. ) | |

CAME ON to be considered *TBK Bank, SSB's Motion for Allowance f Administrative Expense Claim Pursuant to 11 U.S.C. § 507(b)* (the "Motion").  As more fully set forth in the Motion, this Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; that consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; that it has the Constitutional authority to enter this Order; that due and proper notice of the Motion has been provided to the necessary parties; that no other or further notice need be provided; that TBK Bank, SSB ("TBK") has established just cause for the relief requested in the Motion; and that, upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that TBK is GRANTED an allowed administrative superpriority expense claim pursuant to section 507(b) of the Bankruptcy Code in the amount of $854,959.43, with priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**SIGNED this _____ day of _____, 2017.**

_____
**Jeff Bohm**
**U.S. Bankruptcy Judge**