**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **Brougher, Inc.,** | ) | |
| | ) | **Case No. 16-35575** |
| Debtor. | ) | |
| | ) | |

**THE LITIGATION TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING
SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH TBK BANK, SSB**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON **JANUARY 17, 2018 AT 1:30 P.M.** BEFORE THE HONORABLE JUDGE JEFF BOHM IN COURTROOM 600, UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

John D. Baumgartner, in his capacity as litigation trustee (the "Litigation Trustee") for the Brougher Litigation Trust (the "Litigation Trust") and authorized representative for the bankruptcy estate of Brougher, Inc. (the "Debtor"), files this *Motion for Entry an Order*

*Approving Settlement Agreement and Mutual Release With TBK Bank, SSB* (the "Motion"), in support thereof, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      After certain discovery and extensive good faith negotiations, the Litigation Trustee has—subject to entry of an order by this Court approving that Settlement Agreement— entered into a *Settlement Agreement and Mutual Release* (the "Settlement Agreement")[1] with the estate's largest creditor, TBK Bank, SSB ("TBK"), that resolves all claims and pending litigation among the parties.

2.      Specifically, if approved, the Settlement Agreement would result in (i) TBK's proof of claim filed against the estate in the amount of $7,815,408.82 shall be deemed satisfied (the "TBK Proof of Claim") [Claim No. 48]; (ii) TBK withdrawing with prejudice its pending *Motion for Allowance of Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 507(B)* (the "Superpriority Administrative Expense Motion") [Dkt. 151]; (iii) TBK agreeing to not seek any recovery under the *Combined Disclosure Statement and Plan of Liquidation* (as supplemented and/or amended, the "Plan") [Dkt. No. 121] on account of its unsecured deficiency claim; (iv) TBK agreeing to waive its entitlement to the funds currently held in a Frost Bank account, which would otherwise constitute TBK's cash collateral, which will go to the Litigation Trust to be distributed to creditors other than TBK; (v) TBK agreeing to dismiss with prejudice its pending lawsuit against Wade Brougher relating to Mr. Brougher's personal guaranty of the TBK debt (the "Guaranty Lawsuit"); and (vi) TBK granting releases to the Litigation Trustee, the Debtor, Mr. Brougher and Blake Partners, L.P. (one of Mr. Brougher's affiliated companies). In exchange, (y) the Litigation Trustee, the Debtor, Mr. Brougher and Blake Partners would

---

[1] Terms not defined herein have the same meaning ascribed to them in the Settlement Agreement.

grant a release to TBK (which would include the "Retained Claims" against TBK in the Plan); and (z) Mr. Brougher would dismiss with prejudice his counterclaims in the Guaranty Lawsuit.

3.      This is a remarkable result given where this case started—with an order originally terminating use of cash collateral and a case on the verge of conversion to chapter 7.   If approved, the Litigation Trustee anticipates that this Settlement Agreement will generate at least some distribution to unsecured creditors when they would otherwise likely receive little or nothing.   The Litigation Trustee therefore respectfully requests that the Court approve the Settlement Agreement, a copy of which is attached hereto as **Exhibit A**.

## JURISDICTION, VENUE AND AUTHORITY

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (C), (L) and (O).

## RELEVANT FACTUAL BACKGROUND

**A.      The Prepetition Loans between TBK and the Debtor.**

6.      On or about March 4, 2016, TBK and the Debtor entered into a certain $13,050,000 million senior secured facility (the "Credit Facility") comprised of a $10.4 million revolving credit facility (the "Revolver Loan"") and a $2.65 million term loan facility (the "Term Loan"), pursuant to the terms and conditions of that certain Loan Agreement executed by and between the Debtor, as borrower, and TBK, as lender (the "Loan Agreement").  The Revolver Loan and the Term Loan are secured by liens on substantially all of the Debtor's assets.  On the same date, (i) Mr. Brougher executed that certain Guaranty Agreement pursuant to which Mr. Brougher guaranteed the amounts due under the Loan Agreement (the "Guaranty Agreement"),

and (ii) Blake Partners, L.P. the Debtor and TBK entered into a Subordination Agreement and Mr. Brougher, Jerry Brougher, the Debtor and TBK entered into a Subordination Agreement (collectively, the "Subordination Agreements").

7.     On July 7, 2016, TBK and the Debtor entered into that certain First Amendment to the Loan Agreement (the "Loan Amendment").

8.     On October 19, 2016, TBK issued a notice of acceleration to the Debtor and Mr. Brougher and demanded payment in full of the debt to TBK, in accordance with the Loan Agreement (including the Loan Amendment), the Guaranty Agreement, and applicable law.

**B.     The Bankruptcy Case.**

9.     On November 2, 2016, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), commencing Case No. 16-35575 (the "Brougher Bankruptcy Case").

10.    On December 6, 2016, the Court entered an O*rder Denying Debtor's Emergency Motion for Use of Cash Collateral* (the "Order Denying Cash Collateral") [Dkt. No. 63]. Thereafter, the Debtor and TBK filed an expedited *Joint Motion for Entry of Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection to TBK Bank, SSB* [Dkt. No. 68], which order was ultimately entered by this Court on January 13, 2017 [Dkt. No. 75]. The agreed cash collateral order paved the way for the Debtor to prepare, file, and ultimately confirm a plan, as described below.

11.    On March 13, 2017, TBK filed a proof of claim in the Brougher Bankruptcy Case for $7,815,408.82 plus other amounts as stated therein (the "TBK Proof of Claim") [Claim No. 48].

12.     On May 24, 2017, the Debtor filed its *Combined Disclosure Statement and Plan of Liquidation* (as supplemented and/or amended, the "Plan") [Dkt. No. 121].  Pursuant to the Plan, "the Secured Claim of TBK was to be satisfied in full from (i) the credit bid provided for in the TBK Sale Order in the amount of $4,808,500, (ii) the funds, in the amount of $902,641,21, applied to the Secured Claim authorized by the Distribution Order, (iii) any assets remaining in the Admin Claim Reserve after payment of any claims authorized to be paid from the Admin Claim Reserve, and (iv) the retention of the liens securing the Secured Claim of TBK, whether the property subject to such liens is retained by Brougher, Inc. or transferred to the Litigation Trust, to the extent of the allowed amount of the Secured Claim of TBK.  The deficiency amount on account of the Subclass 2A Claim shall be treated as a Class 3 Claim (unless a court of competent jurisdiction awards a final judgment to the Debtor under a theory of lender liability, fraud, or any related claim that voids TBK's claim against the Debtor)."  *See* Plan, Art. VII.B.1. TBK's Proof of Claim, TBK's rights to the residual cash remaining in the Admin Claim Reserve after payment of any claims authorized to be paid from the Admin Claim Reserve, and TBK's deficiency claim are collectively referred to herein as the "TBK Bankruptcy Claims").

13.     On July 28, 2017, the Bankruptcy Court entered its *Order Confirming Debtor's Plan of Liquidation* (the "Confirmation Order") [Dkt. No. 142].

14.     Pursuant to the Plan and Confirmation Order, the Litigation Trust was established pursuant to which the Debtor transferred, among other things, certain "Retained Claims" (as defined in the Plan), which included certain alleged claims against TBK.  John D. Baumgartner was appointed as the Litigation Trustee and was vested with the exclusive right to file and prosecute any "Retained Claims" on behalf of the Liquidating Trust.  In addition, pursuant to the

Plan and Confirmation Order, the Debtor was not dissolved and the Debtor's shareholder elected to retain the stock of the Debtor pursuant to Section VII.E of the Plan.

15.     On September 11, 2017, TBK filed a *Motion For Allowance Of Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 507(B)* (the "Superpriority Administrative Expense Motion") [Dkt. 151].

16.     On October 13, 2017, the Litigation Trustee and Mr. Brougher filed an objection to the Superpriority Administrative Expense Motion (the "Objection") [Dkt. No. 156].

**C.     The State Court Litigation.**

17.     On December 30, 2016, TBK filed its Original Petition against Mr. Brougher based on the Guaranty Agreement (the "Guaranty Lawsuit") in the District Court of Dallas County, Texas, 116th Judicial District (the "State Court"), currently pending as DC-17-00039 (the "State Court Proceeding").

18.     On October 4, 2017, Mr. Brougher filed his *Defendant's Original Answer, Affirmative Defenses, and Counter Claims, and Request for Disclosure* in the Guaranty Lawsuit, wherein Mr. Brougher asserted a counterclaim for the common law action of lender liability, tortious interference, breach of duty of good faith and fair dealing and breach of contract (the "Counterclaim").

19.     On October 30, 2017, TBK filed its Answer to the Counterclaim in the Guaranty Lawsuit.

**D.     The Debtor's Estate's Lender Liability Cause of Action.**

20.     On November 14, 2016, the Debtor filed an *Application for Authority to Employ H. Gray Burks, IV as Special Litigation Counsel for Brougher, Inc. Nunc Pro Tunc to August 23, 2016* [Dkt. No. 26].  The scope of representation is for Burks to investigate the facts, research

applicable law, draft demand letters, and discuss and negotiate a resolution of these claims, and if necessary and if advisable, file a lender liability lawsuit which may include breach of contract, tortious interference of business, breach of good faith and fair dealing in a special relationship against the Bank, and violation of the Fair Debt Collection Practices Act, as applicable.

21.     TBK objected to the Application [Dkt. No. 36], the Debtor filed a Response [Dkt. No. 44], and the Bankruptcy Court conducted a hearing on December 6, 2016.  On December 6, 2016, the Bankruptcy Court entered an *Order Authorizing Employment of H. Gray Burks as Special Litigation Counsel* [Dkt. No. 57].

**E.     Due Diligence by the Debtor and subsequently the Litigation Trustee.**

22.     The Parties have exchanged documents, information, and support for their respective positions regarding the Guaranty Lawsuit, the Counterclaim, the Superpriority Administrative Expense Motion, the Objection, and the Retained Claims against TBK.  The Debtor received and reviewed approximately 6,000 pages of documents produced by TBK. Additionally, the Parties have conducted a meeting with attorneys and principals present, and a deposition of James B. Allin of TBK has been taken.  As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to settle the disputes between them on the terms and conditions set forth herein.

**SUMMARY OF KEY TERMS OF THE SETTLEMENT AGREEMENT[2]**

23.     The Settlement Agreement with TBK is straightforward:  TBK has agreed to (i) that the TBK Proof of Claim shall be deemed satisfied; (ii) withdraw its pending Superpriority

---

[2] This section is intended to provide a summary of the material terms of the Settlement Agreement.  The Litigation Trustee urges any party in interest to review the full Settlement Agreement attached hereto as Exhibit A.  To the extent of any inconsistency with this summary and the Settlement Agreement, the terms of the Settlement Agreement govern.

Administrative Expense Motion; (iii) not seek any recovery under the Plan on account of its deficiency claim; (iv) leave with the estate the funds currently held in a Frost Bank account and which would otherwise constitute TBK's cash collateral; (v) dismiss with prejudice the Guaranty Lawsuit; and (vi) grant releases to the Litigation Trustee, the Debtor, Mr. Brougher and Blake Partners.  In exchange, (y) the Litigation Trustee, the Debtor, Mr. Brougher and Blake Partners would grant a release to TBK (which would include the "Retained Claims" against TBK in the Plan); and (z) Mr. Brougher would dismiss with prejudice his counterclaims in the Guaranty Lawsuit.

24.     In this respect, the principal provisions of the Settlement Agreement are as follows:[3]

A.     <u>Dismissal of Guaranty Lawsuit and Counterclaim and Withdrawal of Superpriority Administrative Expense Motion.</u>  After execution of this Settlement Agreement and within three (3) business days after the Effective Date, (a) TBK shall file a notice withdrawing the Superpriority Administrative Expense Motion with prejudice; and (b) TBK and Mr. Brougher shall jointly file in the Guaranty Lawsuit an *Agreed Motion to Dismiss with Prejudice*, dismissing with prejudice the Guaranty Lawsuit and the Counterclaim in the State Court Proceeding, in the form attached to the Settlement Agreement.  The Parties further agree to act in good faith and to take all such other reasonable and necessary actions as may be required by the Bankruptcy Court or State Court, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith and in support of this Settlement Agreement.

B.     <u>Satisfaction of the TBK Bankruptcy Claims.</u>  Upon the occurrence of the first business day after the Effective Date, the TBK Proof of Claim shall be deemed to have been satisfied without any further action of any of the Parties, and TBK shall receive no further distribution under the Plan, whether from the Debtor or the Litigation Trust.

C.     <u>Complete Release in Favor of TBK</u>.  For the consideration given herein, and except for those obligations created by or arising out of this Settlement Agreement, on the Effective Date, the Brougher Parties, hereby release, acquit, and forever discharge TBK and its respective predecessors in interest, successors, affiliated companies, estates, directors, officers, employees, agents, heirs,

---

[3] The following summary is provided for convenience only and is qualified in its entirety by the Settlement Agreement.

executors, representatives, insurers, attorneys and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date that the Brougher Parties may have or assert, or hereafter may have or assert, against TBK arising directly or indirectly out of or related to the Superpriority Administrative Expense Motion, the Guaranty Lawsuit, the Counterclaim, the TBK Bankruptcy Claims, the Loan Agreement, the Guaranty Agreement, the Subordination Agreements, the TBK Proof of Claim, the Brougher Bankruptcy Case and the State Court Proceeding.

D.   <u>Complete Release in Favor of the Brougher Parties</u>.  For the consideration given herein, and except for those obligations created by or arising out of this Settlement Agreement, on the Effective Date, TBK hereby releases, acquits, and forever discharges the Brougher Parties, and each of their respective predecessors in interest, successors, affiliated companies, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, attorneys and assigns (including, with respect to Blake Partners, the estate of Jerry Brougher) from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date that TBK may have or assert, or hereafter may have or assert, against the Brougher Parties arising directly or indirectly out of or related to the Superpriority Administrative Expense Motion, the Guaranty Lawsuit, the Counterclaim, the TBK Bankruptcy Claims, the Loan Agreement, the Guaranty Agreement, the Subordination Agreements, the TBK Proof of Claim, the Brougher Bankruptcy Case and the State Court Proceeding.

## **Benefits to the Estate**

25.   The benefits to the Estate from this settlement would be:

A.   TBK would release its unsecured claim in the alleged amount of $2,098,367.61.

B.   TBK would withdraw and release its claim for super priority administrative claims in the Superpriority Administrative Expense Motion.

C.     TBK would release its secured claim to the funds held in the Frost Bank account. As of December 20, 2017, the balance in the account is $119,929.85. After payment of the balance owed on the allowed administrative claims, the amount remaining in the account will be $56,742.71.

D.     Saving extensive administrative and legal time and expense.

## ARGUMENT AND AUTHORITIES

26.     The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

27.     In determining whether a proposed compromise is fair and equitable, a Court should consider the following factors:

(i)     the probabilities of ultimate success should the claim be litigated;

(ii)    the complexity, expense, and likely duration of litigating the claim;

(iii)   the difficulties of collecting a judgment rendered from such litigation; and,

(iv)    all other factors relevant to a full and fair assessment of the wisdom of the compromise.

*TMT Trailer*, 390 U.S. at 424. The Fifth Circuit has further elaborated on the factors to be considered in evaluating the wisdom of a proposed settlement. One factor to be considered is "the paramount interest of creditors with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Another factor bearing on the wisdom of the compromise is the extent to which the proposed settlement is the product of arms-length

negotiation.  *In re Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1996).  In deciding whether to accept a compromise, the debtor is required to reach an informed judgment, after diligent investigation, as to whether it is prudent to eliminate the inherent risks, delays, and expense of prolonged litigation.  *In re Mailman Stream Carpet Cleaning Corp.*, 212 F.3d 632 (1st Cir. 2000).  A court is not to substitute its own judgment for that of the debtor, but rather to "canvass the issues" and determine whether the settlement "falls below the lowest point in the range of reasonableness."  *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir. 1983).

28.     The Litigation Trustee believes that the proposed compromise satisfies the requirements established in *TMT Trailer* and *Cajun Electric*.

**A.      Probabilities of Success.**

29.            To prevail on a lender liability claim, the Estate has the burden of proof, including establishing breach of a duty, exercising of control, damages, and causation of damages.  The proposed compromise with TBK through execution of the Settlement Agreement is fair, equitable and reasonable given the *bona fide* disputes and controversies that exist between the parties, both as to the existence and extent of liability, if any, and as to the amount of damages, if any.  Specifically, the parties continue to dispute (i) whether TBK's collateral diminished during the course of the bankruptcy proceeding such that it would be entitled to an administrative expense claim; (ii) whether TBK untimely asserted its administrative expense claim; (iii) whether—and to what extent—TBK exerted control over the Debtor pre-petition sufficient to establish lender liability; (iv) whether—and to what extent—TBK's claims (both in this bankruptcy case and in the State Court proceeding) are offset by any lender liability claims; and (v) whether the TBK Proof of Claim is valid or otherwise objectionable.

30.            The Litigation Trustee, Mr. Brougher and TBK each have different views as to the strength of each other's positions on all of these matters, and all parties have

zealously pursued and defended such claims and causes of action before this Court and the State Court. The existence of these *bona fide* disputes between the parties, however, reflects the significant litigation risk for each of the parties at both the trial and appellate levels if these disputes are not settled. The proposed compromise eliminates all such litigation risks, including the resultant delay and risk of exposure to damages and additional attorneys' fees, and represents an acceptable and preferred compromise for the parties.

**B.      Complexity, Expense, and Likely Duration.**

31.      The claims asserted by TBK against the estate and Mr. Brougher, along with any potential counterclaims the Litigation Trust and Mr. Brougher may have against TBK, are factually complex and would involve a number of fact and expert witnesses. Additionally, the current litigation and claims with TBK are pending in two separate forums, including before the State Court and this Court. Continuing to litigate these claims in multiple forum would be extremely expensive and time consuming. Such litigation is further complicated by the fact that Mr. Brougher has been plagued by health issues.

**C.      Difficulty in Collecting Judgment.**

32.      On information and belief, TBK has sufficient assets to pay any judgment relating to any claims the Litigation Trust has or could assert against TBK.[4]  Notwithstanding that belief, the Litigation Trustee suspects that any judgment collection action would likely take years to resolve, and would involve substantial additional attorney time and expense. This compromise, however, would finally resolve all of the pending disputes between the parties. Moreover, a prompt resolution that results in a full release between the parties—as opposed to a judgment

---

[4] The Litigation Trustee acknowledges that TBK also has a substantial unsecured deficiency claim against the estate, as well as related claims against Mr. Brougher related to his Guaranty.

after months and/or years of litigation—completely eliminates any collection risks that could arise in the future.

**D.      Other Factors.**

33.      The Litigation Trustee believe that the proposed Settlement Agreement is equitable and serves the purposes underlying the Bankruptcy Code.  Moreover, the proposed compromise and Settlement Agreement outlined herein would favorably resolve substantial pending unsecured and administrative claims currently asserted against the estate and Litigation Trust, and would clear the path for potential recoveries to unsecured creditors.  Accordingly, the Litigation Trustee believes that the proposed settlement is in the best interests of the Debtor, its creditors and its estate, and the Litigation Trust and its beneficiaries, and should be approved by the Court.

**CONCLUSION**

WHEREFORE, the Litigation Trustee respectfully requests that the Court (a) enter an order approving the Settlement Agreement; and (b) grant such other relief as the Court may deem just and proper.

Dated:  December 22, 2017                              Respectfully submitted,

                                                                 /s/ H. Gray Burks, IV
                                                             _____
                                                             H. Gray Burks, IV
                                                             State Bar No. 03418320
                                                             Shapiro Schwartz, LLP
                                                             13105 NW Freeway, Suite 1200
                                                             Houston, TX 77040
                                                             Telephone: (713) 462-2565
                                                             Facsimile:  (847) 879-4856
                                                             *SPECIAL LITIGATION COUNSEL FOR JOHN D.*
                                                             *BAUMGARTNER, LITIGATION TRUSTEE FOR*
                                                             *BROUGHER, INC.*

# EXHIBIT A
## (Settlement Agreement)

### SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made by and between Brougher, Inc. ("Brougher, Inc." or the "Debtor"), John D. Baumgartner, in his capacity as litigation trustee (the "Litigation Trustee") for the Brougher Litigation Trust (the "Litigation Trust") and authorized representative for the bankruptcy estate of Brougher, Inc., Wade Brougher ("Mr. Brougher") and Blake Partners, L.P. ("Blake Partners", and collectively with the Litigation Trustee, the Litigation Trust, Brougher, Inc. and Mr. Brougher, the "Brougher Parties"), on the one hand, and TBK Bank, SSB ("TBK Bank"), on the other hand.  The Brougher Parties and TBK Bank are jointly referred to as the "Parties" and, at times, individually referred to as "Party."

### RECITALS

A.    On or about March 4, 2016, TBK Bank and Brougher, Inc. entered into a certain $13,050,000 million senior secured facility comprised of a $10.4 million revolving credit facility and a $2.65 million term loan facility, pursuant to the terms and conditions of that certain Loan Agreement executed by and between Brougher, Inc., as borrower, and TBK Bank, as lender (the "Loan Agreement").  On the same date, (i) Mr. Brougher executed that certain Guaranty Agreement pursuant to which Mr. Brougher guaranteed the amounts due under the Loan Agreement (the "Guaranty Agreement"), and (ii) Blake Partners, Brougher, Inc. and TBK Bank entered into a Subordination Agreement and Mr. Brougher, Jerry Brougher, Brougher, Inc. and TBK Bank entered into a Subordination Agreement (collectively, the "Subordination Agreements").

B.    On July 7, 2016, TBK Bank and Brougher, Inc. entered into that certain First Amendment to the Loan Agreement (the "Loan Amendment").

C.    On October 19, 2016, TBK Bank issued a notice of acceleration to Brougher, Inc. and Mr. Brougher and demanded payment in full of the debt to TBK Bank, in accordance with the Loan Agreement (including the Loan Amendment), the Guaranty Agreement, and applicable law.

D.    On November 2, 2016, Brougher, Inc. filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), commencing Case No. 16-35575 (the "Brougher Bankruptcy Case").

E.    On November 14, 2016, the Debtor filed an *Application for Authority to Employ H. Gray Burks, IV as Special Litigation Counsel for Brougher, Inc. Nunc Pro Tunc to August 23, 2016* [Dkt. No. 26].  The scope of representation is for Burks to investigate the facts, research applicable law, draft demand letters, and discuss and negotiate a resolution of these claims, and if necessary and if advisable, file a lender liability lawsuit which may include breach of contract, tortious interference of business, breach of good faith and fair dealing in a special relationship against the Bank, and violation of the Fair Debt Collection Practices Act, as applicable.  TBK objected to the Application [Dkt. No. 36], the Debtor filed a Response [Dkt. No. 44], and the Bankruptcy Court conducted a hearing on December 6, 2016.

F.      On December 6, 2016, the Bankruptcy Court entered an *Order Authorizing Employment of H. Gray Burks as Special Litigation Counsel* [Dkt. No. 57].

G.      On March 13, 2017, TBK Bank filed a proof of claim in the Brougher Bankruptcy Case for $7,815,408.82 plus other amounts as stated therein (the "<u>TBK Proof of Claim</u>") [Claim No. 48].

H.      On May 24, 2017, Brougher, Inc. filed its *Combined Disclosure Statement and Plan of Liquidation* (as supplemented and/or amended, the "<u>Plan</u>") [Dkt. No. 121].  Pursuant to the Plan, "the Secured Claim of TBK was to be satisfied in full from (i) the credit bid provided for in the TBK Sale Order in the amount of $4,808,500, (ii) the funds, in the amount of $902,641.21, applied to the Secured Claim authorized by the Distribution Order, (iii) any assets remaining in the Admin Claim Reserve after payment of any claims authorized to be paid from the Admin Claim Reserve, and (iv) the retention of the liens securing the Secured Claim of TBK, whether the property subject to such liens is retained by Brougher, Inc. or transferred to the Litigation Trust, to the extent of the allowed amount of the Secured Claim of TBK.  The deficiency amount on account of the Subclass 2A Claim shall be treated as a Class 3 Claim (unless a court of competent jurisdiction awards a final judgment to the Debtor under a theory of lender liability, fraud, or any related claim that voids TBK's claim against the Debtor)."  *See* Plan, Art. VII.B.1.  The TBK Proof of Claim, TBK Bank's rights to the residual cash remaining in the Admin Claim Reserve after payment of any claims authorized to be paid from the Admin Claim Reserve, and TBK Bank's deficiency claim are collectively referred to herein as the "<u>TBK Bankruptcy Claims</u>".

I.      On July 28, 2017, the Bankruptcy Court entered its *Order Confirming Debtor's Plan of Liquidation* (the "<u>Confirmation Order</u>") [Dkt. No. 142].

J.      Pursuant to the Plan and Confirmation Order, the Litigation Trust was established pursuant to which the Brougher, Inc. transferred, among other things, certain "Retained Claims" (as defined in the Plan), which included certain alleged claims against TBK Bank.  John D. Baumgartner was appointed as the Litigation Trustee and was vested with the exclusive right to file and prosecute any "Retained Claims" on behalf of the Liquidating Trust.  In addition, pursuant to the Plan and Confirmation Order, the Brougher, Inc. was not dissolved and Brougher, Inc.'s shareholder elected to retain the stock of Brougher, Inc. pursuant to Section VII.E of the Plan.

K.      On September 11, 2017, TBK Bank filed a *Motion For Allowance Of Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 507(B)* (the "<u>Superpriority Administrative Expense Motion</u>") [Dkt. 151].

L.      On December 30, 2016, TBK Bank filed its Original Petition against Mr. Brougher based on the Guaranty Agreement (the "<u>Guaranty Lawsuit</u>") in the District Court of Dallas County, Texas, 116th Judicial District (the "<u>State Court</u>"), currently pending as DC-17-00039 (the "<u>State Court Proceeding</u>").

M.      On October 4, 2017, Mr. Brougher filed his *Defendant's Original Answer, Affirmative Defenses, and Counter Claims, and Request for Disclosure* in the Guaranty Lawsuit,

wherein Mr. Brougher asserted a counterclaim for the common law action of lender liability, tortious interference, breach of duty of good faith and fair dealing and breach of contract (the "Counterclaim").

N.      On October 13, 2017, the Litigation Trustee and Mr. Brougher filed an objection to the Superpriority Administrative Expense Motion (the "Objection") [Dkt. No. 156].

O.      On October 30, 2017, TBK Bank filed its Answer to the Counterclaim in the Guaranty Lawsuit.

P.      The Parties have exchanged documents, information, and support for their respective positions regarding the Guaranty Lawsuit, the Counterclaim, the Superpriority Administrative Expense Motion, the Objection, and the Retained Claims against TBK Bank. Brougher, Inc. has received and reviewed approximately 6,000 pages of documents from TBK Bank. Additionally, the Parties have conducted a meeting with attorneys and principals present, and a deposition of James B. Allin of TBK Bank has been taken. As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to settle the disputes between them on the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the agreements, covenants and promises by and between the Parties, and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged by each of the Parties hereto, the Parties agree as follows:

1.      Recitals. The foregoing recitals are incorporated herein by reference.

2.      Effective Date.

A.      The effective date (the "Effective Date") of this Settlement Agreement is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to the Settlement Agreement; and (ii) the Bankruptcy Court has entered a "Final Order" (defined below) approving this Settlement Agreement (the "Settlement Approval Order").  For purposes of this Settlement Agreement, the Settlement Approval Order will become a "Final Order" when: fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Settlement Approval Order; and either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Settlement Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Settlement Approval Order is affirmed on appeal and is not subject to further timely appellate review.

B.      If the Effective Date does not occur for any reason: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Settlement Agreement; and (b) neither this Settlement Agreement nor evidence of its terms shall be admissible for any purpose in any related lawsuit, appeal, or any other action.

3.     Dismissal of Guaranty Lawsuit and Counterclaim and Withdrawal of Superpriority Administrative Expense Motion.   After execution of this Settlement Agreement and within three (3) business days after the Effective Date, (a) TBK shall file a notice withdrawing the Superpriority Administrative Expense Motion with prejudice; and (b) TBK and Mr. Brougher shall jointly file in the Guaranty Lawsuit an *Agreed Motion to Dismiss with Prejudice*, dismissing with prejudice the Guaranty Lawsuit and the Counterclaim in the State Court Proceeding, in the form attached hereto as **Exhibit A**.  The Parties further agree to act in good faith and to take all such other reasonable and necessary actions as may be required by the Bankruptcy Court or State Court, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith and in support of this Settlement Agreement.

4.     Satisfaction of the TBK Bankruptcy Claims.   Upon the occurrence of the first business day after the Effective Date, the TBK Proof of Claim shall be deemed to have been satisfied without any further action of any of the Parties, and TBK Bank shall receive no further distribution under the Plan, whether from Brougher, Inc. or the Litigation Trust.  Likewise, TBK shall not receive any payment from any party on the Guaranty Agreement or the Subordination Agreements.

5.     Releases.

A.     Release in Favor of TBK Bank.  For the consideration given herein, and except for those obligations created by or arising out of this Settlement Agreement, on the Effective Date, the Brougher Parties, hereby release, acquit, and forever discharge TBK Bank and its respective predecessors in interest, successors, affiliated companies, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, attorneys and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date that the Brougher Parties may have or assert, or hereafter may have or assert, against TBK Bank arising directly or indirectly out of or related to the Superpriority Administrative Expense Motion, the Guaranty Lawsuit, the Counterclaim, the TBK Bankruptcy Claims, the Loan Agreement, the Loan Amendment, the Guaranty Agreement, the Subordination Agreements, the TBK Proof of Claim, the Brougher Bankruptcy Case and the State Court Proceeding.

B.     Release in Favor of the Brougher Parties.  For the consideration given herein, and except for those obligations created by or arising out of this Settlement Agreement, on the Effective Date, TBK Bank hereby releases, acquits, and forever discharges the Brougher Parties, and each of their respective predecessors in interest, successors, affiliated companies, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, attorneys and assigns (including, with respect to Blake Partners, the estate of Jerry Brougher) from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises,

duties, obligations, claims, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date that TBK Bank may have or assert, or hereafter may have or assert, against the Brougher Parties arising directly or indirectly out of or related to the Superpriority Administrative Expense Motion, the Guaranty Lawsuit, the Counterclaim, the TBK Bankruptcy Claims, the Loan Agreement, the Loan Amendment, the Guaranty Agreement, the Subordination Agreements, the TBK Proof of Claim, the Brougher Bankruptcy Case and the State Court Proceeding.

6.      <u>Bar</u>.  The Parties agree that this Settlement Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any claim by (i) the Brougher Parties against TBK Bank, or (ii) TBK Bank against the Brougher Parties that is released under this Settlement Agreement, except that this Settlement Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Settlement Agreement.

7.      <u>No Admission</u>.  This Settlement Agreement is made to avoid the uncertainties, annoyance, and expense of further litigation.  The consideration provided herein by or on behalf of the Brougher Parties and/or TBK Bank, as the case may be, and/or the execution of the Settlement Agreement is not, and is not to be construed as, an admission of liability, which is expressly denied.

8.      <u>Warranties and Representations</u>.

A.      <u>Representations and Warranties by the Brougher Parties</u>.  The Brougher Parties, solely on behalf of himself or itself, as the case may be, represent and warrant to TBK Bank that:

(1)      As of the Effective Date and subject only to entry of the Settlement Approval Order, the Brougher Parties have all requisite power and authority to execute, deliver and perform this Settlement Agreement and the transactions contemplated herein and the execution, delivery and performance by each of them of this Settlement Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Brougher Parties;

(2)      As of the Effective Date and subject only to entry of the Settlement Approval Order, the execution, delivery and performance by the Brougher Parties of this Settlement Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both,

require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Brougher Parties may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Brougher Parties are a party and/or may be bound;

(3)    No promise, statement, representation, conduct, or consideration by TBK Bank, its owners, agents, servants, employees, attorneys or persons in privity with it has induced the execution of this Settlement Agreement except for those representations and agreements specifically set forth herein;

(4)    That the Brougher Parties are not relying on any promise, statement, representation, warranty or conduct that is not specifically stated in this Settlement Agreement;

(5)    The Brougher Parties are the only persons or entities who, to his or its knowledge, have any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

(6)    The Brougher Parties have freely and voluntarily entered into this Settlement Agreement, without any duress, coercion or undue influence exerted by or on behalf of any other Party, have carefully read this Settlement Agreement and have been fully advised by his or its attorneys of choice concerning his or its rights and have further been advised by his or its attorneys as to the terms and effects of this Settlement Agreement.

B.    <u>Representations and Warranties by TBK Bank</u>.  TBK Bank represents and warrants to the Brougher Parties that:

(1)    As of the Effective Date and subject only to entry of the Settlement Approval Order, TBK Bank has all requisite power and authority to execute, deliver and perform this Settlement Agreement and the transactions contemplated herein and the execution, delivery and performance by him or her of this Settlement Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of TBK Bank;

(2)    As of the Effective Date and subject only to entry of the Settlement Approval Order, the execution, delivery and performance by TBK Bank of this Settlement Agreement and the consummation of the transactions contemplated herein will not, with or without the

giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which TBK Bank may be subject or any order, judgment or decree to which TBK Bank may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which TBK Bank may be bound;

(3)    No promise, statement, representation, conduct, or consideration by the Brougher Parties, its owners, agents, servants, employees, attorneys or persons in privity with it has induced the execution of this Settlement Agreement except for those representations and agreements specifically set forth herein;

(4)    That TBK Bank is not relying on any promise, statement, representation, warranty or conduct that is not specifically stated in this Settlement Agreement;

(5)    TBK Bank is the only entity that, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

(6)    TBK Bank has freely and voluntarily entered into this Settlement Agreement, without any duress, coercion or undue influence exerted by or on behalf of any other Party, has carefully read this Settlement Agreement and has been fully advised by its attorneys of choice concerning its rights and have further been advised by its attorneys as to the terms and effects of this Settlement Agreement.

9.    <u>Survival</u>.  The representations and warranties in this Settlement Agreement shall survive the closing of this Settlement Agreement and all transactions between the Parties that this Settlement Agreement contemplates.

10.    <u>Cooperation</u>.  The Parties agree to cooperate with each other in good faith to achieve the terms of this Settlement Agreement, to take all reasonable steps to give effect to all of the terms, conditions and agreements contained in this Settlement Agreement, and to execute supplemental documents to the extent reasonable and necessary to give effect to the intent of this Settlement Agreement.

11.    <u>Successors and Assigns</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, representatives, successors and assigns.

12.    <u>Entire Agreement</u>.  This Settlement Agreement contains the entire agreement and includes and supersedes any and all prior negotiations, agreements, arrangements, conversations, representations, and warranties related to this subject matter.  No oral understandings,

statements, promises, or inducements contrary to the terms of this Settlement Agreement exist. This Settlement Agreement cannot be changed or terminated orally. No waiver of any of the terms of this Settlement Agreement shall be valid unless in writing and signed by all Parties. The Parties expressly disclaim any reliance on any representations or non-disclosures by any other Party hereto.

13.  <u>Fees, Costs, and Expenses</u>.  The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Settlement Agreement. Nevertheless, in any action or proceeding to enforce this Settlement Agreement or any provision thereof, the prevailing party shall be entitled to his, her or its reasonable attorneys' fees, costs and expenses as determined by a Court of competent jurisdiction.

14.  <u>Choice of Law</u>.  This Settlement Agreement shall be interpreted and construed in accordance with the laws of the State of Texas, without regard to the conflict of laws jurisprudence of the State of Texas.

15.  <u>Dispute Resolution</u>.  Any dispute, action or proceeding arising out of or relating to this Settlement Agreement shall be within the exclusive jurisdiction of the federal or state courts within the State of Texas.

16.  <u>Severability</u>.  In the event that any term or provision of this Settlement Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, all other clauses, paragraphs, or parts of this Settlement Agreement that can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

17.  <u>Waiver</u>.  The failure by any Party to enforce any term or provision of this Settlement Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter.  No waiver by any Party of any term or provision of this Settlement Agreement shall be deemed or shall constitute a waiver of any other provision of this Settlement Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

18.  <u>Construction of Settlement Agreement</u>.  The provisions of this Settlement Agreement shall be liberally construed to effectuate the intended settlement of the disputes and the release of all related claims.  Section headings have been inserted for convenience only and shall not be given undue consideration in resolving questions of construction or interpretation. For purposes of determining the meaning of, or resolving any ambiguity with respect to, any word, phrase, term or provision of this Settlement Agreement, the Parties shall be deemed to have had equal bargaining strength in the negotiation of this Settlement Agreement and equal control over the preparation of this document, such that neither the Settlement Agreement nor any uncertainty or ambiguity herein shall be arbitrarily construed or resolved against any party under any rule of construction.

19.  <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts, by either an original signature or signature transmitted by facsimile or electronic transmission or

other similar process; each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

      20.   <u>Notices and Actions</u>.  Whenever one or more of the Parties must provide a notice to any of the other Parties hereunder, he, she or it must do so by sending written notice (which may include electronic means) to each of the Parties at the addresses set forth below, with copies to counsel as follows:

<u>If to Mr. Brougher, Brougher, Inc. or Blake Partners</u>:

> Wade Brougher
> c/o H. Gray Burks, IV
> 13105 Northwest Freeway, Suite 1200
> Houston, Texas 77040
> Facsimile:  (847) 879-4853
> Email:  gburks@logs.com

> With a copy to:

> H. Gray Burks, IV
> SHAPIRO SCHWARTZ, LLP
> 13105 Northwest Freeway, Suite 1200
> Houston, Texas 77040
> Facsimile:  (847) 879-4823
> Email:  gburks@logs.com

<u>If to the Litigation Trustee</u>:

> John Baumgartner, CIRA, CDBV
> Stout Risius Ross, LLC
> 1000 Main Street, Suite 3200
> Houston, TX  77002
> Email:  jbaumgartner@stoutadvisory.com

> With a copy to:

> Christopher Adams
> Okin Adams LLP
> 1113 Vine Street, Suite 201
> Houston, TX 77002
> Email:  cadams@okinadams.com

<u>If to TBK Bank</u>:

> James B. Allin
> 3 Park Central, Suite 1700
> 12700 Park Central Drive

Dallas, Texas 75251
Facsimile:  (214) 365-1910
Email:  jallin@triumphcf.com

With a copy to:

Krisitan W. Gluck
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
Facsimile:  (214) 855-8200
Email:  kristian.gluck@nortonrosefulbright.com

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound, have caused this Settlement Agreement to be duly executed as set forth below.

*[Signature pages follow]*

JOHN D. BAUMGARTNER, as Litigation Trustee and Authorized Representative for the Bankruptcy Estate of Brougher, Inc.

DATED: _____          _____



BROUGHER, INC.

DATED: _____          _____

Name:

Title:



BLAKE PARTNERS, L.P.

DATED: _____          _____

Name:

Title:



WADE BROUGHER

DATED: _____          _____



TBK BANK, SSB

DATED: _____          _____

Name:

Title:

**Exhibit A**
**to Settlement Agreement and Mutual Release**

**Agreed Motion to Dismiss with Prejudice**

## CAUSE NO. DC-17-00039

| | | |
|---|---|---|
| **TBK BANK, SSB,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **WADE BROUGHER** | § | |
| | § | |
| **Defendant.** | § | **116TH JUDICIAL DISTRICT** |

## <u>AGREED MOTION TO DISMISS WITH PREJUDICE</u>

COMES NOW Plaintiff TBK Bank, SSB and Defendant Wade Brougher, (collectively the "Parties") and jointly move this Court for an order dismissing this suit with prejudice in its entirety, and in support therefore would show the following.

## I.

All matters in difference between the Parties have been fully and finally compromised and the Parties no longer wish to prosecute any of the claims or causes of action pled or asserted, or those which might or could have been asserted in the above-referenced and numbered cause.

WHEREFORE, PREMISES CONSIDERED, the Parties pray that this Court enter an order dismissing this suit with prejudice including all claims and counter-claims, and that taxable costs of court shall be incurred by the party incurring same.

Respectfully submitted,

**BLACKWELL, BLACKBURN
& SINGER, LLP**

_/s/_____

Robert Blackwell
Texas Bar No. 24001744
Lindsey Reinhardt
Texas Bar No. 24070485
7557 Rambler Road, Suite 1450
Dallas, Texas 75231
Telephone:  (214) 442-9602
Facsimile:  (214) 442-9621
Email:  bblackwell@bbsllp.com
Email:  lreinhardt@bbsllp.com

**ATTORNEYS FOR TBK BANK, SSB**


**SHAPIRO SCHWARTZ, LLP**

_/s/_____

H. Gray Burks, IV
Texas Bar No. 03418320
13105 NW Freeway, Suite 1200
Houston, Texas 77040
Telephone:  (713) 933-1509
Facsimile:  (847) 879-4823
Email:  gburks@logs.com

**ATTORNEY FOR WADE BROUGHER**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this _____ day of _____, a true and correct copy of the foregoing instrument was served on all counsel of record in compliance with the Texas Rules of Civil Procedure.

_/s/ Robert Blackwell_____
Robert Blackwell

**Cause No. DC-17-00039**

| | | |
|---|---|---|
| **TBK BANK, SSB,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **WADE BROUGHER** | § | |
| | § | |
| **Defendant.** | § | **116TH JUDICIAL DISTRICT** |

**AGREED ORDER OF DISMISSAL**

Came before the Court the Agreed Motion of Plaintiff TBK Bank, SSB and Defendant Wade Brougher to dismiss with prejudice the above-entitled and numbered cause of action in its entirety.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the above-entitled and numbered cause, including all claims and counterclaims, be and hereby is dismissed with prejudice in its entirety. Costs of court shall be incurred by the party incurring same.

SIGNED this _____ day of _____.

_____
**JUDGE PRESIDING**